Anderson, J.
delivered the opinion of the court.
A surety who pays the debt of his principal, upon the plainest principles of natural reason and justice, has a *750 right to be reimbursed by him. And this principle is recognized by both courts of law and equity. There is an ™P^e(^ contract of indemnity between the principal and his surety, which obliges the former to reimburse ^e who has paid his debt; and the courts of equity will substitute him to the remedies and securities of the creditor for his indemnity; and this not upon the ground of contract, but upon a principle of natural equity and justice. In a court of law the surety in a joint bond with his principal, who has paid the debt of the principal to the creditor, can proceed against the principal upon the implied contract of indemnity, to be reimbursed the amount he has paid. He can proceed against him only upon the implied contract, and not as assignee of the bond; for by the payment of the bond to the creditor it is extinguished. And in Copis v. Middleton, 1 Tur. and Russ. R. 224, Lord Eldon held that in such a case, the doctrine of courts of equity, that a surety who has paid the debt of the principal may be subrogated to the remedies and securities of the creditor against the principal does not apply. He says the rule must be qualified by considering it to apply to such securities as are not extinguished, hut which continue to exist, and do not go back upon payment, to the person of the principal debtor. As where there was a mortgage in addition to the bond, the surety paying the bond, which is thereby extinguished, would have an equity to be subrogated to the benefit of the mortgage which is still a subsisting security. •
This decision is not in accord with the decisions of our courts, as to payments made by the surety, after the death of the principal debtor. It has been repeatedly held by this court, that where the bond has been paid by the surety, after the death of the principal, he will be subrogated to the rights of the creditor, and will be regarded as a specialty creditor of the decedent in the administration of assets, and as binding the real estate *751 of the principal debtor, if the heirs are bound. That the bond although extinguished at law by the payment, will be resuscitated by courts of equity for the indemnity of the surety. But if payment had been made by the surety, in the lifetime of the principal debtor, he is considered here, as in Copis v. Middleton and Jones v. Davids, 4 Russ. R. 277, as only a simple contract creditor. Judge Tucker, in the very able opinion he delivered in Powell’s ex’ors v. White & al., 11 Leigh, 309, 324, says: “We do not in our courts, place the surety in the shoes of the bond creditor where he has paid off the bond in his principal’s lifetime. We still •consider him as a creditor by simple contract. There is, at that time, no superior dignity in one debt over the other. There is no right, no privilege of the creditor to which the surety can be subrogated. Bor though the bond should bind the heirs, yet during the debtor’s life it cannot affect the realty; and as to his ■personalty as well as realty, all creditors have, during his life, the same privileges. Substitution or assignment is, therefore, useless.” “ We apply the principle only where the payment is after the principal’3 death.” This equitable practice of subrogation, which is a creature of equity, is applied to sureties, as we have seen, not upon the ground of contract; for where I become the surety of another by jointly with him executing a bond to his creditor, the implied assumption of the principal debtor to reimburse me if I pay the debt, is ■ not an undertaking under his hand and seal. It is only an implied assumption ,on his part; and the surety having an equity to be subrogated to the rights and securities of the creditor, as for instance to the benefit •of the mortgage, when the creditor held such security, or to be regarded as a specialty creditor of the debtor, as placed in the shoes of the creditor, when he has made payment after the death of the principal debtor, is not upon the ground of contract, because there *752 was no contract by mortgage, or by bond between tt>e principal debtor and the surety. But it is upon the §roun<i that the surety having become bound to the creditor upon an implied contract of indemnity with his debtor, has, in the place of the debtor, satisfied the claim of the creditor, done what the debtor ought to have done ; upon principles of natural justice and equity he should be entitled to the benefit of the creditor’s securities for his indemnity. But only for his indemnity. lie has no equity to be subrogated to the rights and securities of the creditor against the debtor for what he has not paid for him ; but only for what he has paid for him. So that upon the principle of subrogation, as upon the implied contract of indemnity, the surety is not entitled to recover from the principal a greater amount than he has paid for him. lie has oan equity to be subrogated only for his indemnity in cases where the doctrine of subrogation will apply. But in this case the payment having been made by the surety in the lifetime of his principal, it has no where been held, in this country or England, that the principle of subrogation is applicable. He must stand alone upon his implied contract of indemnity. As was said by the Lord Chancellor Cottenham in Reed v. Norris, 14 Cond. E. C. R. 362, 375, the contract between him and his principal is, that the principal shall indemnify him from whatever loss he may sustain by reason of incurring an obligation together with the principal. It is on a contract for indemnity that the surety becomes liable for the debt. It is by virtue of that situation, and because he is under an obligation as between himself and the creditor of his principal, that he is enabled to make the arrangement with that creditor. It is his duty to make the best terms he can for the person in whose behalf he is acting. His contract with the principal is indemnity.” He then asks the question, “ can the surety, then, settle with the obligee, and instead of treating that settlement as pay *753 ment of the debt, treat it as an assignment of the whole debt to himself, and claim the benefit of it' as such to the full amount, thus relieving himself from the situation in which he stands with his principal, and keeping alive the whole debt ? This question- he answers in the negative, and says he is prepared to make a precedent. But this was unnecessary, as Lord Eldon in Rushforth ex parte, 10 Ves. R. 409, 420, and Butcher v. Churchill, 14 Ves. R. 567, had laid down the rule “ that where a surety gets rid of and discharges an obligation at a less sum than its full amount; he cannot, as against his principal, make himself a creditor for the whole amount; but can only claim as against his principal what he has actually paid in discharge.55 The same doctrine is asserted by eminent text writers and in various decisions, both in England and America; 1 Stor. Eq. Jur. s. 499 b., and 499 c. ; Pittman on Principal and Surety, Law Libr. vol. 40, top p. 98, marg. 134, and cases cited. And it is expressly held by this court in Blow v. Maynard, 2 Leigh, 29.
The court is therefore of opinion that Richards, having paid the debt of Forney to Kendrick, for which he was bound in a joint and several obligation as surety for Forney, in the lifetime of his principal, the said obligation was thereby discharged, and the said surety could not take an assignment of it. But that he has a claim on Forney, his principal, for indemnity ; that is, for the amount he paid the obligee, and for that only.
The court is further of opinion that upon the facts of the record Richards mpst be deemed to have paid the debt in April 1868, to Kendrick, the obligee, in Confederate money. The evidence shows that he paid him. about $2,000 in Confederate money, including a small account he had against him for three months’ board, in consideration of an assignment to him of bonds to the same amount, including the bond in which he was surety for Forney. The account seems to have been re *754 ceived, in payment of the bonds, for its face amount, just as the Confederate money was received. There appears to have been no discrimination made by the parties in the transaction between the account and the Confederate money; but it seems to have been received in payment as Confederate money. Eor does it appear that Richards had a right to demand specie or other currency than Confederate in payment of it. And it being a contract made in the latter part of 1862 or 1863, for board, it may fairly be inferred that it was solvable in Confederate currency, there having been no stipulation that it was to be paid in specie. Nor does it appear that this account in the transaction was specially applied to the payment of Forney’s bond. Inasmuch, therefore, ' as Richards, the surety, must be deemed to have paid the debt of his principal -in Confederate money, he was bound to have received from his principal reimbursement in the same sort of funds. And it satisfactorily appearing from the preponderance of testimony in the cause, that the same was tendered by the appellee to Richards soon after he had paid the bond to the obligee,' and that he refused to receive it, the court is further of opinion that the Circuit court did not err in decreeing in his favor only the value of the Confederate money paid by him to Kendrick for his principal. And it not appearing that the amount allowed by the decree is less than the value thereof, the court is of opinion, for the foregoing reasons, to affirm the decree.
Decree affirmed.