# Staunton.

76   731
94   410
76   731
104   276

HAUSER, GUARD'N AD LITEM, &C. v. KING ET ALS.

October 12, 1882.

1. GIFTS, &C.—Insolvent debtors cannot release or surrender without consideration, rights available to their creditors any more than they can give away their property.

2. SUBROGATION—*Surety—Creditor.*—Surety is entitled to all means of payment held by creditor against principal debtor; and creditor hath reciprocal rights to all securities which principal debtor may have furnished for surety's indemnity.

3. IDEM—*Voluntary release—Case at bar.*—Insolvent committee of lunatic sister made trust deed to secure, first, K and A, his sureties in his bond as committee, and J, his surety in debt to C; afterwards, other debts. Lunatic was supported by committee, who received her estate, but charged her no board. Reasonable charge for board would absorb her estate and leave no liability on the sureties on his bond. J died insolvent without paying anything on the debt for which he was surety. On bill to distribute the trust funds—

HELD:

    1. Committee was entitled under Code 1873, ch. 82 §48, to apply lunatic's personalty to her support, so far as necessary, and having maintained her out of his own means, has a claim against her estate for his reimbursement, which claim he has no right to release, and thus put a burden on the sureties on his bond.

    2. Though J died insolvent without paying the debt for which he was surety, the creditor is entitled to have the debt paid out of the trust fund provided by the principal debtor for J's indemnity. ·

Appeal from decree of circuit court of Warren county in suit of Isaac N. King and Edward B. Jacobs *against* William J. Hauser, guardian *ad litem* of Barbara Hauser, Henry Hauser, Thomas N. Ashby, T. L. Blakemore, J. N. Buck, J. W. Webster, R. H. Turner, G. W. Carter, Ann Hauser, Emanuel Hauser and others.

In 1851, Henry Hauser qualified as committee of his lunatic sister, Barbara, with King and Ashby as sureties on his bond of $2,000 penalty. He received her estate of $1,068.25. She lived in his family. On settlement of his accounts, he refused to charge her board, thereby throwing on his sureties a liability which would have been relieved by a reasonable charge for her board. There was conflict of testimony as to whether her services paid for her support. In 1857, H. Hauser, wholly insolvent, conveyed his property in trust to secure, first, King and Ashby as such sureties, and Jacobs as surety in a debt represented by G. W. Carter; second, other debts to King; third, debts to his sister Mary and Ann Hauser. On bill to distribute the proceeds of the sale of the trust property, the circuit court decreed that Henry Hauser be required to charge lunatic with her board and maintenance, and that the trustee be required to pay out of the trust funds, as of the first class, the debt represented by Carter, wherein Jacobs was surety, who had died insolvent without having paid anything on it. From this decree the lunatic by, &c., and others appealed.

*Moses Walton* and *J. Y. Menefee*, for appellants.

*S. S. Turner*, for appellees.

BURKS, J., delivered the opinion of the court.

The assignments of error (2 and 3) based on exceptions to the commissioner's report, affecting the accounts of R. H. Turner as trustee under the deed of trust made by Henry Hauser being withdrawn by appellant's counsel, the only remaining questions relate to the Carter debt and the debt of said Hauser as committee of his insane sister.

1. As to the Carter debt.

So much of the decree of February —, 1878, as audited this as a debt of the first class under the deed, was reheard, and the court, by the decree of February 26, 1880, declaring that the debt was properly audited as a first-class debt, and as such entitled to participate in the trust fund, refused to set aside such part of said decree, but sustained the same. Payment of the debt was ordered by decree of the next day, and the commissioners holding the fund having made payment as ordered, their action reported was confirmed by the final decree entered in the cause at the May term following.

The trust declared by the deed of Henry Hauser is, first to indemnify his sureties as committee of Barbara Hauser, and also to indemnify Edward B. Jacobs as his surety on the Carter debt. Jacobs is dead. Neither he nor his personal representative ever paid any part of the debt, and his estate, it would seem, is insolvent. The contention for the appellant is, that the design and effect of the deed as to this debt were, not to provide for payment to the creditor (Carter), but merely and only to secure Jacobs and save him from loss by reason of his suretyship, and that, as he was never actually damnified, and by reason of his insolvency his estate can never be, neither his representative nor Carter is entitled to participate in the trust fund.

The contention is not well founded. It has been long regarded as settled, that while the surety is entitled for his indemnification to all the liens, securities and means of payment held by the creditor against the principal debtor, so, reciprocally, the creditor is entitled as a means of satisfaction to all the securities in the hands of the surety furnished for his indemnity by the debtor. And these mutual equities are worked out on the principle of subrogation. Hence, if the principal has pledged his property for the surety's indemnity against loss by reason of an existing liability, fixed and presently enforceable, the

surety, without awaiting judicial compulsion, may pay the debt and file his bill to have the property applied to his reimbursement, or, without and before payment, he may, unless fettered in his remedies by special agreement, have the property applied for his exoneration to the satisfaction of the debt for which he is bound; and to this latter equity of the surety, the creditor is also entitled. by subrogation. Either, therefore, may bring his bill to enforce the security. And this is but natural justice, and beneficial, too, to all parties. The debt is discharged out of the property of him who owes it, the creditor is satisfied and the surety relieved; and all is accomplished in one proceeding, and thus circuity of action, with consequent delay and useless accumulation of costs, is prevented. The debt for which Jacobs was bound as surety being due, he had the indubitable right to have the deed foreclosed for his indemnity, if he had paid the debt, or for his exoneration, if he had not paid it, by having the trust subject applied to the creditor's satisfaction, as was done in this case. His equity is not affected by the circumstance of his insolvency. It is sufficient that he was bound for the debt and continued bound. Being bound, he was entitled to be relieved to the extent of the means dedicated to his indemnification, and the creditor, through him, was entitled to the same means.

The case of *Hopewell and others* v. *Bank of Cumberland*, 10 Leigh, 206, cited by appellant's counsel, will be found, on examination, not in conflict with any thing said in this opinion. On the contrary, the whole reasoning of Judge Parker, in whose opinion the other judges concurred, supports the view we have taken. There, the bank, as the holder of certain negotiable notes, claimed the benefit of a deed of trust given to indemnify (among others) several endorsers, who were discharged from all liability by the bank's laches; and it was decided that the bank was not entitled to relief because it could only claim to be subro-

gated to the rights of the endorsers, and, as the latter had. no right to participate in the trust fund, because they had been discharged from all liability, and therefore were not damnified, there was no security to which the bank could be substituted.

The whole opinion of Judge Parker proceeds on the implied concession, that if the liability of the endorsers had been fixed and they had not been discharged, the indemnity provided by the deed would have enured to the benefit of the bank. The case of *Hopewell* v. *Bank of Cumberland* was followed in *Bank of Virginia* v. *Boisseau,* 12 Leigh, 387. See also notes to *Dering* v. *Earl of Winchelsea,* 1 Lead Cas. Eq., Part 1 (4th Am. Ed.), 173, 174, 179.

2. As to the debt of Henry Hauser as committee.

This is also audited as a debt of the first class. Its payment is not directly secured. The deed in its terms only provides for the indemnity of the sureties as it does in relation to the surety in the Carter debt. And yet no party seeks on that account to exclude it from participation in the trust fund. The sureties are supposed to be solvent, and this seems to be the only circumstance which gives color to the claim that this debt should be audited as a debt secured and the Carter debt be rejected—a circumstance, as already shown, not entitled to any weight in determing the rights of the litigants to the fund.

The commissioner, on reference, stated two accounts of Hauser as committee. In the one he credited him with $120 per year as an allowance for the maintenance of the lunatic; in the other, he made no allowance. The first statement resulted in a nominal balance against the committee, and the last in a balance of upwards of $2,500 against him.

On exceptions by the committee, Judge Keith, "after considering the matters carefully," as he says in his opinion copied into the record, rejected both statements, and decided—

" 1st. That under the peculiar circumstances of this case, in order to aid equity and prevent injustice to innocent parties, Henry Hauser should be required to charge his sister Barbara Hauser (the lunatic), with her board and maintenance.

" 2d. That the amount so charged for only one year should not be allowed to exceed the annual interest accruing on the principal of the estate of the said Barbara."

After a like careful examination of the record, we concur with the learned judge in his opinion and decision.

It was contended in the court below, as it is here, in the first place, that the services rendered to the committee and his family by the lunatic compensated for her support.

Upon this point much testimony was taken on both sides. It is more or less conflicting, and it would be a useless consumption of time to review it. We have examined all of it, and it is sufficient to say, we are satisfied that after giving full credit for all the service rendered, at least the interest on the principal money due by the committee was required for the support. This, upon an average, is less than one-half of the amount allowed by the commissioner.

But, in the second place, it is insisted that there should have been no allowance for support, because the committee testifies that he makes no charge.

This is not like the case of a father called to account as guardian of his infant child. In such a case, as a general rule, and in the absence of peculiar circumstances warranting a departure from it, no allowance for support out of the ward's estate is made to the guardian, if of ability to maintain the ward, because *the law* imposes upon the father the duty to support his child. " The court, however," it is said, "will look with liberality to the circumstances of each particular case and to the respective estates of father and children, and will authorize the income arising from the estates of infants to be applied to their support whenever,

under all the circumstances, it appears to be proper." *Evans v. Pearce and others,* 15 Gratt. 515, 516. See further, as to allowances to guardians, *Armstrong's Heirs* v. *Walkup,* 9 Gratt. 372; *Griffith and others* v. *Bird and others,* 22 Gratt. 73; *Sayers v. Cassell and others,* 23 Gratt. 525.

Nor does the rule stated in *Harshberger's Adm'r and others* v. *Alger and Wife and others,* 31 Gratt. 52, touching compensation for services as between a parent and his adult child, have any application to the case we are now dealing with.

This is the case of a brother accounting as the committee of his insane sister. Whatever affection may prompt, he is under no legal obligation to support his sister out of his own means. On the contrary, the statute provides that the committee of an insane person "shall take care of and preserve the estate [of such person], and manage it to the best advantage; shall apply the personal estate, or so much as may be necessary, to the payment of the debts of such insane person, and the rents and profits of the residue of his estate, real and personal, and the residue of the personal estate, or so much as may be necessary, to the maintenance of such insane person," &c. Code of 1873, ch. 82, § 48.

Notwithstanding this statute, if Henry Hauser were solvent, and the rights of third persons not involved, no one would blame, but all would commend him, if he should devote a portion of his own means to the support of his unfortunate sister and suffer her own estate to accumulate for her benefit. But at the time he made the deed to indemnify his sureties and secure his creditors, he was insolvent, and has continued so ever since.

The question is, Will he be permitted, under these circumstances, by refusing to take the credit on his indebtedness which the law gives him, to impose upon his sureties and creditors secured by the deed the burden of his bounty

and thus defeat in a measure the very security he has provided for them? He certainly would not be allowed, as against existing creditors, to give away his land, specific chattels, choses in action, or other estate. Voluntary releases or surrenders of rights available to creditors are in like manner forbidden. Referring to but not repeating the passage in the opinion of Judge Stanard in *Dold's Trustee* v. *Geiger's Adm'r*, 2 Gratt. 102, quoted by Judge Staples a few days ago in delivering judgment in *Penn* v. *Guggenheimer and others*—a quotation not more applicable to that case than to this—we venture to extract further from the opinion. "A cardinal rule of legal ethics," says that eminent jurist, "inculcates the duty of being just before being generous. Donations, voluntary transfers, assignments or surrenders of rights, even in favor of wife or children, by a debtor, which might have been used to provide for his debts, have, under the influence of this pervading rule of the English law, been made to yield to the paramount claims of creditors. Even where a debtor, having a general power to appoint property which he never owned, exercises that power in favor of volunteers, the property in the hands of such volunteers is burdened with the debts of the appointer, if it be necessary for the satisfaction of them. This application of this rule shows it to be so searching that it reaches property which, though not owned by the debtor, he might have made his, but has voluntarily, without valuable consideration, made the property of others." Cases cited.

Giving effect to the principles thus enunciated, Henry Hauser cannot be allowed, under the pretence that he makes no charge, to voluntarily relinquish or surrender a valuable claim to which he is legally entitled, and thereby, and to the extent of the value given up, enhance the burden resting on his sureties and diminish the security of his creditors. It may be, though the circumstances might warrant a different conclusion, that his conduct in this matter

has not been influenced by improper motives.  However that may be, we think his sureties and his creditors have the right to insist that the trust fund shall not be burdened to their prejudice with a larger debt than he actually owes his sister's estate.  What he owes is the balance after deducting what the estate owes him.  That balance has been correctly ascertained by the decrees reviewed, which, being in all respects free from error, will therefore be severally affirmed.

DECREE AFFIRMED.