| 85 | 403 |
| 97 | 370 |
| 85 | 403 |
| 98 | 213 |
| 85 | 403 |
| 104 | 132 |

## Staunton.

### SOUTHALL ET AL. V. FARISH ET ALS.

September 20th, 1888.

1. PRINCIPAL AND SURETY—*Repayment to surety.*—Insolvent bank holds judgments against principal and surety, and deposits of surety, on which it pays 60 per cent., but which third party had contracted to take at par. Surety pays judgments with his deposits, under agreement with principal to repay the face value of the deposits so used;

HELD:

> Surety is entitled to receive face value of the deposits; though the general rule is that if surety discharges the debt for less than its full amount, he can only claim against principal the sum paid. *Kendrick* v. *Forney,* 22 Gratt. 748.

2. IDEM—*Nudum pactum.*—Bank refused to transfer surety's deposits to contractor for purchase thereof until the judgments were paid;

HELD:

> This fact does not make principal's agreement to repay the amount at its face value, without consideration.

3. IDEM—*Deposits as set-off.*—In determining value of deposits to surety, whether or not deposits transferred by him were a valid set-off in hands ‘ of transferee against latter's indebtedness to the bank;

HELD:

> To be immaterial.

4. IDEM—*Assignment to surety.*—Where surety pays part of such judgment with his deposits, principal, compromising balance, may have the judgment assigned to surety for fifty cents on the dollar of the amount paid by him, though the bank pays less dividend.

5. IDEM—*Usury.*—Such agreement between surety and principal; HELD not to be usurious.

6. CHANCERY PRACTICE—*Fraud—Decree conforms to the bill.*—Bill not charging fraud and specifying wherein it consists, no relief based on fraud can be had. But if that were not so, even if principal had not been told that bank had required payment of the judgments out of the deposits;

HELD:
  That fact would not render the agreement fraudulent.
7. PRINCIPAL AND SURETY—*Protection of surety—Quære.*—Where all
    parties are before the court and their liabilities ascertained, a decree
    will be made in the first instance against principal, where that can be
    done without delay or injury to creditor: yet *quære* whether or not
    creditor with surety's money or its equivalent in his hands will be com-
    pelled, without resorting thereto, first to exhaust his remedies against
    principal.

Appeal from decree of circuit court of Albemarle county,
entered May 18th, 1888, in the chancery cause of Thomas L.
Farish's trustees against Thomas L. Farish's creditors. The
suit was for the purpose of having the trustees' accounts settled
and the trust administered under the guidance of the court.
The trust deed secured, among other debts, "the debt originally
due the Charlottesville National Bank by two notes aggregating
about $300, on which A. J. Farish was endorser, and which A.
J. Farish discharged by setting off against same an amount
due him by the bank at the time of its failure in October, 1875."
These two notes, one for $238.45, the other for $105, went to
judgment in the county court of said county at its March term,
1873. And the Farmers and Merchants Bank of Charlottes-
ville obtained a judgment in said circuit court at its May term,
1873, against said Thomas L. Farish and his endorser, A. J.
Farish, for $933.21, with interest and costs. In his report of
an account of debts taken under an order in this suit, the mas-
ter makes the Charlottesville National Bank debt amount to
$879.39 as of October 1st, 1887, upon the view of A. J. Farish,
who had paid it with his deposits in the bank, it allowing then
sixty per cent. thereof, being insolvent, and who proved an
agreement between himself and T. L. Farish to repay him at
the face value of the deposits. The master on the same view
makes the Farmers and Merchants Bank debt, which had been
assigned to A. J. Farish, $690.20 as of October 1st, 1887.

On the other hand, on the view of the trustees, to allow A.
J. Farish the *value* of his deposits, the master makes the Char-

lottesville Bank debt $482.62, and the Farmers and Merchants Bank debt only $34.88, as of October 1st, 1887. The bank had required of A. J. Farish to pay the judgments out of his deposits before his agreement was made with T. L. Farish to repay the face value of the deposits; but the trustees failed to prove that the latter was not informed of such requirement before entering into the agreement. The bill makes no charge or specification of fraud. The trustees excepted to the report. The court, however, overruled the exceptions, and decreed in favor of A. J. Farish, on the Charlottesville National Bank debt, $879.39, with interest on $512.02 from October 1st, 1887, till paid, and on the Farmers and Merchants Bank debt for $690.20, with interest on $427.81 from October 1st, 1887, till paid, and the trustees appealed.

*A. R. Blakey,* and *S. V. Southall,* for the appellants.

*George Perkins,* for the appellee.

LEWIS, P., delivered the opinion of the court.

1. The first question in the case is, whether the appellee, A. J. Farish, is entitled, as against the trustees of Thomas L. Farish, to the par value of the deposits in the Charlottesville National Bank, used by him in discharging two judgments in favor of the bank, aggregating $343.45 of principal, recovered on two negotiable notes executed by Thomas L. Farish, with A. J. Farish as endorser, or whether he is entitled to what the trustees claim to be "the real value" of the deposits. If the former view be the correct one, then the appellee was rightly allowed by the decree complained of the sum of $879.39 as of the first of October, 1887; whereas, if the latter view be correct, he is entitled only to $482.62 as of that date.

The trustees, the appellants here, contend that the latter view ought to have been adopted by the circuit court, because the sum

claimed by A. J. Farish and allowed by the decree is greater than the value of what was actually paid by him, or more than he is entitled to recover. The rule is certainly too well settled to be controverted, nor is it disputed that the contract between the principal and the surety is for *indemnity only,* and therefore if the surety discharges an obligation for a less sum than its full amount, he can only claim against the principal the sum so paid. *Blow* v. *Maynard,* 2 Leigh, 29 ; *Kendrick* v. *Forney,* 22 Gratt. 748.

But the question is, what, as between the parties, is to be considered the amount paid by the surety in the present case ? The bank suspended and went into the hands of a receiver in October, 1875, and the dividends subsequently paid to its depositors amounted to only a little over sixty per cent. of their claims ; and if this could be taken as the proper basis upon which to ascertain the value of the deposits with which the judgments were discharged, or, in other words, the amount actually paid by the surety, a reversal of the decree would necessarily follow. But the facts of the case show that this is not the equitable or proper basis of calculation.

It appears that immediately after the suspension of the bank there was an agreement between Thomas L. and A. J. Farish, whereby the latter undertook to discharge the judgments, which were bearing twelve per cent. interest, and the former to repay the amount with interest at six per cent., and in pursuance of this agreement the judgments were discharged. It also appears that the debt, as now claimed by the appellee, was afterwards recognized by Thomas L. Farish, and in the trust deed of August 10, 1885, appointing the appellants trustees, the debt is referred to as "the debt originally due the Charlottesville National Bank by two notes, aggregating about $300, on which A. J. Farish was endorser, and which he discharged by setting off against the same an amount due him by the Charlottesville National Bank at the time of its failure, in October, 1875." The deed, it is true, further recites that "how much will be due the

said A. J. Farish upon settlement on account thereof is not known." But we do not perceive any inconsistency—certainly none that is material—between this recital and the deposition of the witness by which the agreement above-mentioned was proved; for the witness does not undertake to give the exact amount of the debt, but simply says A. J. Farish agreed to take up the two notes upon which the judgments were obtained, and that Thomas L. Farish agreed to repay the amount with six per cent. interest. It is quite probable the notes were not at hand when the deed was prepared, and that their exact amount, principal and interest, was not known to or remembered by the parties at the time, and hence the guarded recital in the deed. This is rendered still more probable by the fact that the deed refers to a number of other debts due by the grantor without giving, even approximately, the amount of any one of them, or describing them in any other than the most general terms; so that the failure to give the exact amount of the debt in question is a circumstance of no special significance.

To· determine, then, the amount paid by the appellee and, therefore, the sum he is entitled to recover for his reimbursement or indemnity, the question must be determined, what, as between the parties, were the deposits *worth* when the judgments were discharged? The appellants contend that they were worth just what the broken bank would pay, and that their value was then certain, though not ascertained, since that is sufficiently certain which can be made certain. In other words, they claim that their value is to be ascertained upon the basis of the dividends subsequently paid by the bank to its depositors. But this, as already said, is not the proper basis of calculation. Their value to the parties at the time was much greater.

It appears that when the bank suspended, the deposits of the appellee therein amounted to several hundred dollars in excess of the judgments, and that on the night of the day of its suspension the appellee contracted with the Charlottesville Milling and Manufacturing Company to transfer to it for flour *the whole*

of his deposit in the bank. The appellee, who was examined as a witness, testifies that the next morning he went to the bank to ascertain the amount of his deposit, and while there informed the president of the bank that he had sold his deposit. The latter, however, he says, objected to his transferring the whole amount, saying he would require the judgments above-mentioned to be paid out of it, which was done by charging against the deposit the amount of the judgments. The balance he then transferred for flour, amounting to upwards of one hundred barrels, which he got at a slight advance over the regular price, the deposits being taken by the company at their par value. The company, it seems, was indebted to the bank, and used the certificates of deposit, transferred to it by the appellee, in its settlement with the bank. The appellee further testifies that he afterwards sold the flour for fifty cents less than he gave for it, but whether this means fifty cents less per barrel, or on the whole purchase does not appear. It proves, however, that the deposits were worth to him about par, and not merely the sum contended for by the appellants. And upon this idea the parties contracted, as they had a right to do, there being no other proof as to what was considered the value of the deposits at the time. Nor is there any evidence to show that if the arrangement had not been made, the judgments could have been satisfied by Thomas L. Farish otherwise than by a payment in full in lawful money.

The position of the appellants that the agreement is a mere *nudum pactum,* is clearly untenable. Their contention is, that inasmuch as the president of the bank required the appellee to pay the judgments out of his deposits, he had no option in the matter, but was bound to pay them in that way, and hence the subsequent agreement with Thomas L. Farish, based upon his promise to pay with his deposits, was without a valuable consideration.

To this it is answered that the appellee, being a surety, could have filed a bill in equity to compel the creditor to enforce the

lien of the judgments against the property of the principal debtor, and thus have obtained absolute control of his deposits; and in support of this position reference is made to *Stephenson* v. *Taverners*, 9 Gratt. 398; *Kent* v. *Matthews*, 12 Leigh, 585; *Hauser* v. *King*, 76 Va. 733. It admits of doubt, to say the least, whether, upon principles of natural justice and equity, a creditor in such a case, having money, or its equivalent, in his hands belonging to the surety, could be compelled to exhaust his remedies against the principal debtor, instead of being permitted to apply the money in his hands to the satisfaction of the debt, leaving the surety to proceed against the principal for his indemnity. For, as was said by the court in *Meade* v. *Grigsby's Adm'rs*, 26 Gratt. 612, and repeated in *Penn* v. *Ingles*, 82 Va. 65, the creditor is under no obligation to look to the principal debtor or to his property, or to exhaust his remedies against the latter before resorting to the surety, although where all the parties are before the court, and their liabilities are ascertained, a decree will ordinarily be made, in the first instance, against the party ultimately liable, where that can be done without material delay or injury to the creditor. *Dabney* v. *Smith*, 5 Leigh, 18; *Horton* v. *Bond*, 28 Gratt. 815; *Bell and Wife* v. *McConkey*, 82 Va. 176; *Paxton* v. *Rich, ante* p. 378.

It is unnecessary, however, to decide that question in the present case, for there was at least *an implied* contract between the parties, which obliged the principal to reimburse the surety when the debt was paid. *Kendrick* v. *Forney, supra.*

These considerations also dispose of the contention of the appellants, that the agreement, if not a *nudum pactum*, is usurious. The deposits, when used, were worth par to the parties, as we have seen. They were certainly worth that much to the appellee, and they were worth not less to Thomas L. Farish, since they were used in paying a debt he owed, bearing twelve per cent. interest, and which constituted a lien on his land, and for which, by his agreement with the appellee, he was to pay thereafter only six per cent. The agreement, therefore, was not

VOL. LXXXV—52

usurious when made, and, as was decided in *Pollard* v. *Baylor,*
6 Munf. 433, the question whether a contract is usurious or not,
is to be decided with reference to the time when it was entered
into.

Another point made by the appellants is, that Thomas L.
Farish was not informed that the president of the bank had
required the appellee to pay the judgments out of his deposits,
and as knowledge of that fact was kept from him, the agree-
ment is void, on the ground of fraud. A sufficient answer to
this position is, that no such charge is made in the bill, and can-
not, therefore, be properly considered now; for "nothing—and
least of all *fraud*—can be the subject of trial, until it is put
in issue." *Koger* v. *Kane's Adm'r,* 5 Leigh, 606. Nor will
a mere general charge of fraud suffice. When relied upon,
the bill must show, specifically and in detail, in what the
fraud consists, and how it was effected, so that the defendant
may have the opportunity of shaping his defence accordingly.
And if not alleged, evidence upon the point, however strong a
case it may show, is irrelevant, and will be suppressed as im-
properly taken, otherwise, "the pleadings, instead of being a
shield to protect parties from surprise, would be a snare to entrap
them." *Thompson* v. *Jackson,* 3 Rand. 504; *Knibb's Ex'or* v.
*Dixon's Ex'or,* 1 Id. 249; *Gregory* v. *Peoples,* 80 Va. 355; *Wel-
fley* v. *Shen. Iron, &c., Co.,* 83 Id. 768; *Redd* v. *Dyer,* Id. 331;
*Hickman's Ex'or* v. *Trout,* Id. 478; *Voorhees* v. *Bonesteel,* 16
Wall. 16, and cases cited.

The same rule, substantially, applies in all cases. As was
said in the recent case of *Kent's Adm'r* v. *Kent's Adm'r,* 82 Va.
205: "If a party is entitled to recover at all, he must recover
on the case stated in his bill. And although the plaintiff may
make out a case which, under other circumstances, would entitle
him to the aid of the court, yet; if it is not the case made by the
bill, he cannot recover"; citing 2 Rob. (old) Pr. 288; *Grigsby*
v. *Weaver,* 5 Leigh, 215; *Mundy* v. *Vawter,* 3 Gratt. 494. See,
also, *Potomac Manuf. Co.* v. *Evans,* 84 Va. 717.

Here fraud is neither alleged nor proved. The deposition of the appellee, which is not contradicted, shows that when the president of the bank required him to pay the judgments out of his deposits, he sent for Thomas L. Farish, and that after their interview he returned to the bank, and had the judgments charged against his deposits. The fair inference from this testimony, in the absence of anything to the contrary, is that Thomas L. Farish *was* informed of what had taken place at the bank, especially in view of the recital in the deed above-mentioned as to the payment of the judgments by the appellee.

We will only add, upon this branch of the case, that whether the certificates of deposit which the appellee transferred, constituted, under the national banking act, a lawful set-off against the indebtedness of the transferee, the Charlottesville Milling and Manufacturing Company, to the bank, is not a material subject of inquiry in this case. It was not unlawful for the appellee to dispose of them, nor for the milling company to purchase them; and therefore the question is, what was the company willing to give for them and what did it give for them? The object of the company in acquiring them was not a matter for the appellee to consider, nor does it appear from the record that it entered into *the contract* in any way whatever.

2. The next question relates to the Farmers and Merchants Bank debt. This bank suspended on the 3d of March, 1877, holding, at the time, a judgment against Thomas L. and A. J. Farish for upwards of $900. Upon this judgment the appellee afterwards paid in checks on the bank and deposits in the bank the sum of $855.62. The balance due on the judgment was then compromised by C. D. Fishburne, trustee, with Thomas L. Farish, and the judgment was endorsed as follows:

"This judgment has been satisfied by Thomas L. Farish, with the exception of $427.81, which is for the benefit of A. J. Farish, with six per cent. interest from March 3, 1877, with no recourse to the plaintiffs or C. D. Fishburne, trustee."

In other words, the parties agreed that A. J. Farish should

be allowed fifty cents on the dollar for what he had paid for his principal debtor, and the judgment was assigned accordingly. The appellants object to this arrangement, on the ground that the assignment is for much more than the value of the checks and deposits used in making the payment of $855.62, above-mentioned, and they refer to the fact, which is conceded, that the utmost the assets of the bank can ultimately pay to its depositors is four per cent. of the deposits. The circuit court, however, decreed in favor of the appellee for the amount of the assigned judgment; that is, for $427.81, with interest, and in this there was no error. It was competent for the parties to agree at the time as to the amount to be paid to the appellee in return for what he had paid, and as the contract, confessedly, was *bona fide,* it ought to stand; as much so as if the assets of the bank should ultimately pay the depositors in full.

We are therefore of opinion, without further discussion of the subject, to affirm the decree.

DECREE AFFIRMED.