# Roland E. Goode, Trustee, et al.

v.

# Burke Town Plaza, Inc.

Record No. 930169

November 5, 1993

Present: All the Justices

*William E. Rollow (Rollow & Giroux,* on briefs), for appellants.
*Jerrod A. Thrope (Catherine A. Bledsoe; John A.C. Keith; Paul B. Terpak; Gordon, Feinblatt, Rothman, Hoffberger & Hollander; Blankingship & Keith,* on brief), for appellee.

JUSTICE WHITING delivered the opinion of the Court.

In this case, we decide whether a landlord's subordination agreement was procured by duress and, if not, whether the landlord imposed a condition upon its execution of the agreement.

The trial court sustained the tenant's demurrer to the landlord's amended bill of complaint raising these issues. Accordingly, we recite as true the facts that are well-pled in the amended bill of complaint, the facts that are revealed by the exhibits attached to the bill, and the facts that reasonably may be inferred from those sources.

*P.M. Palumbo, Jr., M.D., Inc. v. Bennett*, 242 Va. 248, 249, 409 S.E.2d 152, 152 (1991). And we construe those facts and inferences in the light most favorable to the landlord, whose amended bill of complaint was dismissed on demurrer. *Beach v. Virginia Nat'l Bank*, 235 Va. 376, 377, 367 S.E.2d 516, 517 (1988).

On January 1, 1977, Burke Springs Investments, Section One, a general partnership, and Roland E. Goode, Trustee, a partner also holding title as trustee to the partnership property (collectively landlord), leased 12.4626 acres of land in Fairfax County to Burke Town Plaza, Inc. (tenant) for a period of 54 years. The tenant built a shopping center on the land and operated it successfully for a number of years.

The landlord had subordinated its interest to the tenant's $2,925,000 loan to pay the costs of building the shopping center. Late in 1990, the tenant and BTR Realty, Inc. (BTR), the tenant's sole stockholder, negotiated with the Lutheran Brotherhood for a $7,450,000 loan upon the property. This loan was intended to generate approximately five million dollars for BTR's benefit after discharge of the tenant's existing deed of trust.

The landlord did not learn of these negotiations until March 13, 1991, when an agent of BTR asked Goode to subordinate the landlord's interest in the property to the lien of the proposed loan. Goode refused, asserting that the lease did not require the landlord to subordinate to the loan.

The lease provides in pertinent part:

> Promptly upon Tenant's request . . . Landlord shall join with Tenant in the execution of any construction and/or permanent mortgage placed by Tenant upon the leased premises . . . to secure a loan made by Tenant upon any improvements upon or proposed to be erected upon the premises, for the purpose of subjecting Landlord's fee simple estate in the premises and all of Landlord's rights under this Lease to the lien of any such mortgage . . . and shall, at Tenant's request, promptly join with Tenant in any renewal, modification, or extension of any such mortgage.

Eight days later, BTR's attorney wrote Goode (with a copy to landlord's counsel) contending that the lease did require the landlord's subordination, threatening suit, and warning that Goode "and the other signatories [to the lease] shall be liable for all damages my

client may suffer as a result of a breach." Apparently, Goode and the other three partners, all of whom were the beneficiaries of the trust holding title to the partnership property, had signed the lease. Later, BTR's counsel told Goode that if the landlord did not subordinate, the landlord would be sued for millions of dollars in damages, adding that "BTR will either get its money from the Brotherhood or you."

Shortly thereafter, during the ensuing negotiations, BTR's counsel suggested to landlord's counsel that BTR might resolve the dispute by filing a declaratory judgment suit to construe the subordination provisions of the lease. Later, however, BTR's counsel refused to file the suit and demanded that the landlord immediately acquiesce in its construction of the subordination agreement "or face financial ruin."

On April 10, counsel for the tenant and BTR sent the landlord's counsel a "strident" letter by electronic mail, advised him of the April 18 expiration date of the Lutheran Brotherhood loan commitment, and again threatened suit for substantial damages if the loan did not close. With knowledge that the partners were elderly retirees, the tenant sent them copies of this letter by electronic mail and other means designed for immediate delivery.

Upon her receipt of the letter, one of the beneficiaries, an elderly widow, fearing bitter litigation and financial ruin, "urged Landlord to acquiesce." The remaining three elderly beneficiaries (of whom Goode was one) sympathized with her and also "urge[d] acquiescence" by the landlord's counsel in the demand of the tenant and BTR.

On April 11 and 12, landlord's counsel suggested to counsel for BTR that BTR proceed with its previously proposed declaratory judgment suit to resolve the matter. The following day, landlord's counsel confirmed his suggestion by an electronically transmitted letter. On that same day, counsel for the tenant and BTR advised the landlord's counsel by electronic mail that there would be no further negotiations and that his clients intended to close five days later on April 17. He also demanded that Goode be present to sign the subordination agreement.

The day before the projected closing on April 17, the landlord's counsel transmitted a letter electronically to counsel for BTR reminding him that the lease authorized the tenant to execute the subordination agreement as attorney in fact for the landlord if the

tenant felt that the landlord's refusal to subordinate was unreasonable. BTR's counsel immediately rejected the suggestion and insisted that Goode be present the following day to sign the subordination agreement as trustee.

Goode and the landlord's attorney appeared at the scheduled closing. Before Goode signed the subordination agreement, he and the landlord's attorney advised the tenant, BTR, and the Lutheran Brotherhood that the landlord was acting under duress. They also delivered a letter stating that the landlord was not obligated to subordinate its property interest to the Lutheran Brotherhood's loan and reserving the right to litigate this and other listed issues at a future time.

Almost 11 months later, the landlord sued the tenant and BTR, but not the Lutheran Brotherhood. The landlord seeks neither an invalidation of the Lutheran Brotherhood's lien nor a construction of the subordination clause of the lease. The landlord asks (1) that its subordination agreement be held a nullity, and (2) that the court grant appropriate relief by way of a surety bond and sequestration of the tenant's income from the shopping center.

The landlord contends on appeal that its subordination agreement is a nullity because (1) it was procured by duress, and (2) it is subject to a condition. We find no merit in either contention.

Duress exists when a defendant commits a wrongful act sufficient to prevent a plaintiff from exercising his free will, thereby coercing the plaintiff's consent. 13 Samuel Williston, A Treatise on the Law of Contracts § 1603, at 663 (3d ed. 1970). Because the application of economic pressure by threatening to enforce a legal right is not a wrongful act, it cannot constitute duress. *Bond v. Crawford*, 193 Va. 437, 444, 69 S.E.2d 470, 475 (1952) (lien creditor's threat to exercise legal right to foreclose a defaulted deed of trust if debtor did not voluntarily convey secured and other property). Further, a similar pursuit of a good faith claim, later determined to be groundless, is not a wrongful act sufficient to constitute duress. 13 Williston § 1606, at 671-73.

During oral argument, the landlord conceded that there was a good faith dispute about its obligation to subordinate. Nevertheless, the landlord argues that it has averred sufficient facts from which a factfinder might conclude that Goode's signature to the subordination agreement was procured by duress.

The difficulty with this argument is that even if the acts of the tenant, BTR, and their counsel were unethical, strident, and

coercive, as implied and characterized in the bill of complaint, these acts were done in the good faith belief that the landlord was obligated under the lease to subordinate. Therefore, as reprehensible as those acts may have been, they do not constitute actionable duress. Because we conclude that the acts of BTR and the tenant were not actionable, we need not decide whether the landlord was, in fact, coerced.

Next, the landlord contends that its execution of the subordination agreement was conditioned on its right to obtain an adjudication of the meaning of the disputed provision. According to the landlord, its execution of the subordination agreement is not controlling because there was a "variance between the offer and the acceptance." The landlord does not say what the offer and the acceptance were, but we assume the landlord means that the tenant's demand was the offer and the landlord's execution of the subordination agreement with a condition attached was the acceptance. The landlord adds that "[a]s a corollary, when there is a reservation or a condition to an acceptance, no binding agreement springs into being by such a conditional consent until either that reservation and or condition is accepted by the other party or is satisfied by performance."

The landlord, however, overlooks the fact that a bilateral contract was already in existence. And, although there was a good faith dispute about whether the lease required the landlord to subordinate to the proposed loan, the landlord did so. The landlord's attempt to impose a condition on its subordination was never agreed to by the tenant. Thus, the landlord's alleged condition was either an offer to modify the lease that was never accepted by the tenant, or a unilateral imposition of a new term in the lease. But a bilateral lease cannot be amended by the unilateral act of one party thereto. *Stanley's Cafeteria, Inc. v. Abramson*, 226 Va. 68, 72-73, 306 S.E.2d 870, 872 (1983). Accordingly, the landlord's so-called condition is itself a nullity and therefore unenforceable.

We find no error in the trial court's action, and the trial court's judgment will be

*Affirmed.*