COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Beales, Malveaux and Frucci
Argued at Norfolk, Virginia


PRABHAT KUMAR SINHA

v.      Record No. 0054-25-1

AMIT K. JAIN, PERSONAL REPRESENTATIVE,
 ADMINISTRATOR AND EXECUTOR OF THE
 ESTATE OF ACHLA KUMAR, ET AL.

MEMORANDUM OPINION* BY
JUDGE STEVEN C. FRUCCI
MARCH 24, 2026

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Everett A. Martin, Jr., Judge

> Kevin E. Martingayle (Bischoff Martingayle, P.C., on briefs), for
> appellant.
>
> Amy L. Leone (SuAnne Hardee Bryant; Davis Law Group, P.C., on
> brief), for appellee Amit K. Jain, Personal Representative,
> Administrator and Executor of the Estate of Achla Kumar, and
> Trustee of the Achla Kumar Revocable Living Trust dated
> September 24, 1997.
>
> Amy L. Leone (John P. O'Herron; Timothy A. Richard;
> *Thompson*McMullan, P.C., on brief), for appellees St. Jude
> Children's Research Hospital and Medecins Sans Frontieres U.S.A.,
> Inc., d/b/a Doctors Without Borders, USA.


This appeal arises from Prabhat Kumar Sinha's complaint to determine his elective share.

After the death of his wife, Achla Kumar, Sinha received a notice informing him that he was not a

beneficiary of Kumar's estate, which was worth around $17 million. Sinha contends that the Circuit

Court of the City of Norfolk erred in sustaining Amit Jain's demurrer and dismissing his complaint

with prejudice. For the following reasons, we affirm the ruling of the circuit court.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

On June 2, 2000, Kumar and Sinha were married, and they remained married without separation until Kumar's death on December 14, 2023. Before their marriage, on April 24, 2000, Sinha and Kumar entered into a premarital agreement (the "Agreement").[1] In the Agreement, among other things, the parties waived their right of an elective share and agreed that "each party shall be free to make a Will or other Estate plan without any requirement of making a provision for the other spouse." In addition, the parties waived their right to seek disclosure of the other's assets. Specifically, both parties handwrote the following provision (hereinafter the "Waiver"):[2]

> In considering our present circumstances, our independence, our desire to live separately at the beginning of our marriage, our continued separate professions & separate interests I am comfortable with neither disclosing to my wife the entirety of my gross assets nor seeking disclosure from her regarding her gross assets. I believe that disclosure of our liabilities is sufficient.

After the death of Kumar, Sinha received a "Notice Regarding Estate" which notified him that he was not a beneficiary of Kumar's estate, which was worth around $17 million. Shortly after receiving the "Notice Regarding Estate," Sinha filed a notice of elective share, notice of claim for homestead allowance, notice of claim for family allowance, and notice of claim for exempt property allowance. Then, Sinha filed the present lawsuit to determine his elective share.

Amit Jain, the executor of the estate, demurred to Sinha's complaint, and, after a hearing, the circuit court sustained the demurrer and granted Sinha leave to file an amended complaint. In addition to sustaining the demurrer, the circuit court entered an order allowing Doctors Without

---

[1] Although dated April 22, 2000—when Sinha signed—Kumar did not sign the Agreement until April 24, 2000.

[2] The only differences in the waivers are the replacement of "wife" with "husband" and the use of masculine pronouns in the place of feminine pronouns.

Borders, a beneficiary under Kumar's will, to join the litigation as a party defendant. Following, Sinha filed an amended complaint.

In the amended complaint, Sinha averred that the Agreement is void and unenforceable pursuant to Code § 20-151 and that the Waiver within the Agreement is void and unenforceable pursuant to Code § 64.2-308.14. Specifically, Sinha alleged that:

(1) he did not execute the Agreement voluntarily because he was "subjected to material misrepresentations, fraud, duress, and undue influence";

(2) the Agreement was unconscionable because he was "not provided a fair and reasonable disclosure of [] Kumar's property and financial obligations" and he did not "voluntarily and expressly waive the right to a proper disclosure of [] Kumar's property and financial obligations";

(3) the Agreement "is contradictory, internally inconsistent, ambiguous, incomplete, and fails to demonstrate a meeting of the minds on all material terms";

(4) the Agreement "sets forth demonstrably false statements";

(5) his signature was "obtained by express and/or implied misrepresentations by [] Kumar as to her approximate wealth, justifications for the Agreement, and intentions"; and,

(6) he did not have, and reasonably could not have had, and adequate knowledge of the property or financial obligations of Kumar.

As to Kumar's alleged material misrepresentations, fraud, imposition of duress, and undue influence statements, Sinha alleged that: he was told by Kumar to "execute the Agreement immediately as a condition of marriage"; Kumar stated the purpose of the Agreement "was to protect Sinha and his children" from a prior marriage; Kumar did not disclose her "substantial wealth"; Kumar, "through various statements, led him to believe that she did not have significant wealth or assets"; during the marriage, Kumar "concealed" her substantial wealth and assets; Kumar had "information about Sinha's financial condition," and, because she "knew that her financial condition was vastly stronger and superior," she "used her superior knowledge of the parties' respective financial conditions" to take unfair advantage of Sinha; the parties did not discuss

consultation with legal counsel before signing the Agreement; and, since both Kumar and Sinha are "Indian-American," the concept of a premarital agreement "was entirely foreign to Sinha."

As to Sinha's contention that the Agreement is unconscionable because of the "contradictions, ambiguities, incomplete portions and false statements," he specifically alleged that: "it is falsely stated that the 'parties have freely and voluntarily made this Agreement with competent, independent legal advice and with full knowledge of their rights'" because Sinha did not execute the Agreement voluntarily, he did not have the benefit of legal advice, and he did not have "full knowledge of [his] rights"; the Agreement states that each party had disclosed their liabilities to each other, but no disclosure occurred; although he wrote in the Waiver he was "comfortable" with the nondisclosure of assets, that statement was false; there is a reference to "property identified on the attached schedules [that] is property acquired by each respective party prior to the marriage and shall be deemed separate property" but no schedules were attached; and the parties agreed to execute estate planning documents in the future so that the marital residence and other marital property would go to the surviving spouse, but this was an "unenforceable agreement to agree, and it never happened."

In addition, Sinha averred that the Agreement was unconscionable because "there was a gross disparity regarding the assets of the parties when the Agreement was signed." Sinha also contended that even if the Agreement was legally valid and binding, it was breached by Kumar by failing to disclose assets and liabilities and failing to attach schedules to the Agreement. Jain and Doctors Without Borders demurred to the amended complaint.

After a hearing on the demurrers, the circuit court sustained the demurrers and denied Sinha's request for further leave to amend, holding that it "would be futile." Sinha appeals.

ANALYSIS

We review the circuit court's ruling on a demurrer de novo. *Givago Growth, LLC v. iTech AG, LLC*, 300 Va. 260, 264 (2021). In reviewing a circuit court's decision on a demurrer, we "accept as true all factual allegations expressly pleaded in the complaint" and interpret them "in the light most favorable to the plaintiff." *Taylor v. Aids-Hilfe Koln e.V.*, 301 Va. 352, 357 (2022) (quoting *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018)). We also accept any factual allegations that "fairly can be viewed as impliedly alleged or reasonably inferred from the facts [expressly] alleged." *Hooked Grp., LLC v. City of Chesapeake*, 298 Va. 663, 667 (2020) (quoting *Welding, Inc. v. Bland Cnty. Serv. Auth.*, 261 Va. 218, 226 (2001)). "But we are not bound by the pleader's conclusions of law that are couched as facts." *Wright v. Graves*, 78 Va. App. 777, 781 (2023). We also "disregard allegations that 'are inherently impossible[] or contradicted by other facts pleaded' and reject 'inferences [that] are strained, forced, or contrary to reason.'" *New Age Care, LLC v. Juran*, 71 Va. App. 407, 429 (2020) (second alteration in original) (first quoting *Parker v. Carilion Clinic*, 296 Va. 319, 330 (2018); and then quoting *Parker*, 296 Va. at 330 n.2). "In ruling on the demurrers, this Court considers not only the pleadings, but also the documents attached thereto." *Mansfield v. Bernabei*, 284 Va. 116, 121 (2012). And "a court considering a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings." *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 382 (1997).

Code § 20-151 states:

> A. A premarital agreement is not enforceable if the person against whom enforcement is sought proves that:
>
> 1. That person did not execute the agreement voluntarily; or
>
> 2. The agreement was unconscionable when it was executed and, before execution of the agreement, that person (i) was not provided a fair and reasonable disclosure of the

property or financial obligations of the other party; and (ii) did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided.

B. Any issue of unconscionability of a premarital agreement shall be decided by the court as a matter of law. Recitations in the agreement shall create a prima facie presumption that they are factually correct.

Code § 64.2-308.14(B) states that a "surviving spouse's waiver is not enforceable if the surviving spouse proves that":

1. The waiver was not executed voluntarily; or

2. The waiver was unconscionable when it was executed and before execution of the waiver because:

    a. A fair and reasonable disclosure of the property or financial obligations of the decedent was not provided;

    b. Any right to disclosure of the property or financial obligations of the decedent beyond the disclosure provided was not voluntarily and expressly waived, in writing; and

    c. The surviving spouse did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the decedent.

*Whether Sinha voluntarily signed the Agreement and Waiver*[3]

"Recitations in the agreement shall create a prima facie presumption that they are factually correct." *Sims v. Sims*, 55 Va. App. 340, 348 (2009) (quoting Code § 20-151(B)). The Agreement states, under the subheading of "**Voluntary Execution**," that "the parties acknowledge that they are

---

[3] A finding that the right to disclosure was voluntarily waived defeats Sinha's claim that the Agreement and Waiver are unconscionable under Code §§ 20-151 and 64.2-308.14, respectively. This is because a finding of unconscionability requires multiple factors to be met, one of them (found in both code sections) being that any "right to disclosure of the property or financial obligations" of the other party was not "voluntarily" waived. Thus, if we find that Sinha voluntarily signed the Waiver, then we cannot find that the Agreement and Waiver are unconscionable under Code §§ 20-151 and 64.2-308.14.

entering into this Agreement freely and voluntarily, that they are represented by competent legal counsel (and have the right to separate counsel)." Accordingly, the presumption is that Sinha voluntarily signed the Agreement and Waiver.

"As we have concluded in another context, '[t]he term "voluntary" connotes "[u]nconstrained by interference; unimpelled by another's influence; spontaneous; . . . [r]esulting from free choice."'" *Chaplain v. Chaplain*, No. 1301-10-1, slip op. at 9 (Va. Ct. App. Jan. 18, 2011)[4] (alterations in original) (quoting *Shuler v. Va. Emp. Comm'n*, 9 Va. App. 147, 150-51 (1989)).

"Factors relevant to assessing whether a prospective spouse's execution of a premarital agreement was voluntary include":

> "the coercion that may arise from the proximity of the execution of the agreement to the wedding, or from surprise in the presentation of the agreement; the presence or absence of independent counsel or of an opportunity to consult independent counsel; inequality of bargaining power—in some cases indicated by the relative age and sophistication of the parties; whether there was full disclosure of assets; and the parties' understanding of the rights being waived under the agreement or at least their awareness of the intent of the agreement."

*Id.* (quoting *In re Marriage of Bonds*, 5 P.3d 815, 823 (Cal. 2000)).

> Duress may exist whether or not the threat is sufficient to overcome the mind of a man of ordinary courage, *it being sufficient to constitute duress that one party to the transaction is prevented from exercising his free will by reason of threats made by the other and that the contract is obtained by reason of such fact.* Unless these elements are present, however, duress does not exist. . . . Authorities are in accord that the threatened act must be wrongful to constitute duress.

---

[4] "Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value." *Jones v. Commonwealth*, 71 Va. App. 375, 382 n.2 (2019) (quoting *Otey v. Commonwealth*, 61 Va. App. 346, 350 n.3 (2012)).

*Wills v. Wills*, 72 Va. App. 743, 765 (2021) (alteration in original) (quoting *Pelfrey v. Pelfrey*, 25 Va. App. 239, 246 (1997)). "Duress exists when a defendant commits a wrongful act sufficient to prevent a plaintiff from exercising his free will, thereby coercing the plaintiff's consent." *Id.* (quoting *Goode v. Burke Town Plaza, Inc.*, 246 Va. 407, 411 (1993)).

### A. Duress

Sinha alleges that Kumar presented him with the Agreement around six weeks before the wedding and that he was to "execute the Agreement immediately as a condition of marriage." Consequently, he claims it was because of this duress that he was coerced into signing the Agreement.

In *Remillard v. Remillard*, No. 1063-21-2 (Va. Ct. App. Sept. 6, 2022), the husband "waited until the last moment—the afternoon before their wedding day—to present wife with the Agreement . . . and provid[ed] no time for her to consult an attorney." *Id.*, slip op. at 6. Further, the Court found that "this all took place after wife, going on husband's assurances that he would take care of her, sold her home and left her career . . . and had become dependent on husband . . . for her livelihood." *Id.*, slip op. at 7. Thus, these "overreaching or oppressive influences" were at play when the wife signed the agreement, and the Court found the agreement to be unconscionable. *Id.* (quoting *Chaplain v. Chaplain*, 54 Va. App. 762, 774 (2009)).

In *Chaplain*, the Court found that the "evidence of unconscionability is ample." 54 Va. App. at 774. In addition to a gross disparity of assets, the Court found that the unconscionability of the premarital agreement was rooted in the "inequities and oppressive circumstances surrounding the execution of the agreement." *Id.* at 775. In testifying to the oppressive circumstances, wife stated that: she "had limited knowledge of English, that she did not and could not read it"; the agreement was "handed to her in husband's attorney's office, opened to

the signature page"; husband "represented the agreement to be a "marriage paper";[5] and, "husband did not provide a copy of the agreement to her for her review or for her attorney to review, either before or after she signed it." *Id.* at 774-75. Ultimately, the Court held that wife established a prima facie case that the premarital agreement was unconscionable. *Id.* at 776.

In *Wills*, the wife argued that the circuit court erred in "failing to find 'that she signed the Agreement involuntarily under legal duress.'" 72 Va. App. at 764. Specifically, the wife argued that she was coerced into signing the postnuptial agreement based on husband's "threat to divorce her." *Id.* at 765. In addition, the wife had testified that husband had started "showing violent behavior" and that he "moved out of the marital bedroom." *Id.* at 751. However, the Court held that "wife was not 'prevented from exercising [her] free will by reason of' husband's statements - and that the Postnuptial Agreement was not 'obtained by reason of such' statements." *Id.* at 766 (alteration in original) (quoting *Pelfrey*, 25 Va. App. at 246).

The facts here are inapposite to cases where courts have held a premarital agreement to be involuntary or unconscionable. First, the presumption is that the parties did have legal counsel, and, although Sinha alleges that he did not consult with legal counsel before signing the Agreement, one of the factors in determining voluntariness is "the presence or absence of independent counsel or *of an opportunity to consult independent counsel*." *Chaplain*, slip op. at 9 (emphasis added). Second, even if Sinha did not have legal counsel, contrary to what he stated multiple times in the Agreement, he had roughly six weeks prior to the wedding to seek legal advice. In *Remillard*, the parties were in a different country, the day before the wedding, when they signed the premarital agreement. Under those facts, the husband "provid[ed] no time for her to consult an attorney." Slip op. at 7. Here, Kumar did not impose such an "overreaching or oppressive influence." *Id.* Sinha had six

---

[5] Specifically, wife testified that she thought that she was signing a "paper for marriage . . . like [a] license or something." *Chaplain*, 54 Va. App. at 771 (alterations in original).

weeks to consult with an attorney and "the fact that [he] may have failed to seek independent legal advice does not negate [his] opportunity to do so." *Black v. Powers*, 48 Va. App. 113, 141 (2006). Moreover, Sinha handwrote his waiver of the disclosure of Kumar's assets, further supporting the point that he was aware of the rights he was waiving.

Accordingly, as a matter of law, Sinha failed to sufficiently plead that six weeks prior to the wedding was so close that he lacked the opportunity to consult with legal counsel and, therefore, failed to sufficiently plead that his will was overborne and his signature was procured involuntarily, to-wit: that he was under duress to an extent that he was prevented from "exercising his free will."[6] *Wills*, 72 Va. App. at 765 (quoting *Goode*, 246 Va. at 411). Therefore, his signing of the Agreement and Waiver was not involuntary, and thus not unconscionable under Code §§ 20-151 and 64.2-308.14(B).[7]

B.  Fraud in the Inducement

Sinha also alleges that he was fraudulently induced into signing the Agreement and attached Waiver because Kumar, "through various statements, led him to believe that she did not have significant wealth or assets." Again, because he stated in the Agreement that he did in fact sign voluntarily, the presumption is that he was not fraudulently induced into signing.

"Fraud, since it must be clearly proved, must be distinctly alleged." *Sweely Holdings, LLC v. SunTrust Bank*, 296 Va. 367, 382 (2018) (quoting *Welfley v. Shenandoah Iron, Lumber, Mining*

---

[6] Further, based on the time and place that the Agreement was notarized, it appears that Sinha and Kumar did not sign the Agreement the same day, nor even in the same state. Sinha signed the Agreement on April 22, 2000, in Maryland, and Kumar signed on April 24, 2000, in Virginia Beach, Virginia.

[7] In addition, we are unpersuaded by Sinha's allegation that being "Indian-American" was an oppressive factor making his signature involuntary. Although Sinha alleges that "as an Indian American" the concept of a premarital agreement was "entirely foreign to him," there is no allegation that he was unable to read the agreement, unlike the facts in *Chaplain* where the wife stated she could not read English and she "relied on translators for oral and written communication in English." 54 Va. App. at 771.

*& Mfg. Co.*, 83 Va. 768, 771 (1887)).  As such, "allegations of fraud in a complaint 'must show, specifically and in detail,' all elements of the cause of action at a level which, if believed, would qualify as clear and convincing proof." *Id.* (quoting *Southall v. Farish*, 85 Va. 403, 410 (1888)). "Generalized, nonspecific allegations . . . are insufficient to state a valid claim of fraud." *Id.* (alteration in original) (quoting *Ward's Equip.*, 254 Va. at 385).  Courts are tasked with asking, assuming the evidentiary allegations are true, whether "a reasonable jury could find them sufficient to justify the plaintiff's reliance under a clear-and-convincing standard of proof." *Id.*  And "[v]iewing the pleadings through this lens, a court must engage in the same analysis when considering a demurrer to a fraud claim." *Id.*

Sinha does not allege what Kumar's statements were or when they were made.  Moreover, Sinha does not even allege that Kumar lied about her wealth or amount of assets, but instead, vaguely, "through various statements, [she] led him to believe that she did not have significant wealth or assets."  As a matter of law, this "[g]eneralized, nonspecific allegation[] . . . [is] insufficient to state a valid claim of fraud." *Sweely Holdings*, 296 Va. at 382 (third alteration in original) (quoting *Ward's Equip.*, 254 Va. at 385).  Sinha's allegation that he was fraudulently induced into signing the Agreement does not "show specifically and in detail" the fraud that "would qualify as clear and convincing proof." *Id.* (quoting *Southall*, 85 Va. at 410).

Accordingly, even combining the allegations of duress and fraud in the inducement, Sinha, as a matter of law, failed to sufficiently plead that "oppressive circumstances" overcame his will and

caused him to sign the Agreement, including the Waiver.[8]  As such, his signing of the Agreement and Waiver was voluntary, and not unconscionable under Code §§ 20-151 and 64.2-308.14(B). Although Sinha obviously regrets signing the Agreement, "courts cannot relieve one of the consequences of a contract merely because it was unwise." *Rogers v. Yourshaw*, 18 Va. App. 816, 823 (1994) (quoting *Derby v. Derby*, 8 Va. App. 19, 30 (1989)).  Therefore, the circuit court did not err in sustaining the demurrers and dismissing the case with prejudice.[9]

CONCLUSION

For the reasons stated above, the judgment of the circuit court is affirmed.

*Affirmed.*

---

[8] In addition, Sinha's other allegations of misrepresentations, fraud, duress, and undue influence are unavailing.  The allegation that Kumar "concealed" her substantial wealth and assets *during* the marriage is irrelevant to what induced Sinha into signing the Agreement.  And the allegation that Kumar "used her superior knowledge of the parties' respective financial conditions" to take unfair advantage of Sinha lacks sufficient detail and ignores the fact that Sinha would have had the opportunity to learn of Kumar's financial condition if he chose not to waive that right.

[9] On appeal, Sinha does not argue that leave to amend should have been granted.  Thus, we need not address whether the circuit court abused its discretion in denying Sinha leave to amend for a second time.