**Alexandria**

CHRISTINE F. ROGERS

v.

MICHAEL YOURSHAW

No. 1598-93-4

Decided August 23, 1994

COUNSEL

Carla F. Ward, for appellant.

Joseph A. Condo (Beth A. Bittel; Joseph A. Condo & Associates, P.C., on brief), for appellee.

OPINION

**BAKER, J.**—Christine F. Rogers (wife) appeals from a decree of divorce that upheld the validity of the antenuptial agreement (agreement) entered into between wife and Michael Yourshaw (husband) on February 27, 1977. The agreement was incorporated into the final decree entered by the Circuit Court of Arlington County (trial court) on July 15, 1993. In this appeal, wife asserts that the trial court erred in (1) finding the agreement valid at its inception, (2) refusing to allow husband's testimony from an earlier juvenile and domestic relations district court hearing concerning wife's alleged waiver of counsel, (3) finding that the parties had not abandoned the agreement, (4) excising invalid provisions of the agreement in order to render it valid, (5) not finding the agreement unconscionable, and (6) refusing to order equitable distribution of the parties' marital property. Upon review of the record and the briefs of the parties, we find no error in the trial court's rulings and affirm the decision.

On appeal, we construe the evidence in the light most favorable to husband, the prevailing party below, granting to him all reasonable inferences fairly deducible therefrom. *McGuire v. McGuire*, 10 Va. App. 248, 250, 391 S.E.2d 344, 346 (1990). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Pommerenke v. Pommerenke*, 7 Va. App. 241, 244, 372 S.E.2d 630, 631 (1988) (citation omitted).

## FACTUAL BACKGROUND

Wife and husband previously had been divorced from their respective spouses. Prior to their marriage, the parties agreed that they should execute an antenuptial agreement. Wife had worked as a legal secretary for a Washington, D.C. law firm;[1] however, at the time of their marriage, she was a first-year law student at George Washington University Law School. Wife drafted a proposed agreement that was subsequently modified. Without consulting independent counsel, the agreement was executed by wife and husband on February 27, 1977, five days before their mar-

---

[1] Husband was associated with that law firm, and wife had been his secretary.

riage on March 2, 1977.[2]

The marriage continued until July 15, 1993, on which date a decree of divorce was entered dissolving the bonds of matrimony between the parties. No exception to that decree was taken.

Prior to the entry of the divorce decree, on July 14, 1993, the trial court entered a decree holding:

1. The antenuptial agreement was a valid and enforceable contract;

2. that the agreement was entered into freely and voluntarily, following "full financial disclosure";

3. that wife was not totally without some understanding of the law to know that she had the opportunity to seek the advice of independent counsel had she chosen to do so; and that she knowingly waived that right; and

4. that any portion of the agreement that purports to prevent either party from seeking child support or a division or partition of any jointly titled real or personal property is unenforceable.

This appeal emanates from the decree entered on July 14, 1993.

## I.

"In Virginia, 'marital property [agreements] entered into by competent parties upon valid consideration for lawful purposes are favored in the law and such will be enforced unless their illegality is clear and certain.' " *Drewry v. Drewry*, 8 Va. App. 460, 466, 383 S.E.2d 12, 14 (1989) (citations omitted).

Prior to July 1, 1986, the validity of antenuptial agreements was governed by conditions set forth in *Batleman v. Rubin*, 199 Va. 156, 158, 98 S.E.2d 519, 521 (1957). By the enactment of the Virginia Premarital Agreement Act (Act), effective July 1, 1986, execution of such contracts has been given legislative approval

---

[2] Although three children were born of the marriage between the parties, issues concerning these children are not contested in this appeal.

within the limits set forth therein.[3] The test of whether any of the contractual provisions in the agreement will bar enforcement must be based upon conditions existing at the time the agreement is executed. *See, e.g., Hartz v. Hartz*, 234 A.2d 865 (Md. 1967). The courts will not invalidate a premarital contract because subsequent history discloses that the contractual provisions are "ill-reasoned or ill-advised." *See Drewry*, 8 Va. App. at 469, 383 S.E.2d at 16.

Wife argues that the Act is ambiguous, and she asserts that the legal principles established by *Batleman* should control. *Batleman* held as follows:

> To render an ante-nuptial agreement valid, there must be a fair and reasonable provision therein for the wife, or—in the absence of such provision—there must be full and frank disclosure to her of the husband's worth before she signs the agreement, and she must sign freely and voluntarily, on competent independent advice, and with full knowledge of her rights.

199 Va. at 158, 98 S.E.2d at 521 (citation omitted). The trial court made specific findings of fact which showed that the *Batleman* test had been met. The record supports the trial court's findings of fact existing at the time the agreement was executed. If the *Batleman* test is applied, nothing in the record requires this Court to hold that the trial court's judgment that the agreement is a valid and enforceable contract is clearly wrong or without evidence to support it. *See* Code § 8.01-680.

Moreover, we reach the same result if we apply the Code provisions enacted subsequent to the execution of the agreement. Code § 20-154 provides, in pertinent part, as follows:

> All written agreements entered into prior to the enactment of this chapter between prospective spouses for the purpose [of] affecting any of the subjects specified in § 20-150 *shall be valid and enforceable if otherwise valid as contracts.*

---

[3]Code §§ 20-147 through 20-155. Even though such agreements are in contemplation of a divorce, they were not against public policy even before that Code section was enacted. *Capps v. Capps*, 216 Va. 378, 380, 219 S.E.2d 901, 903 (1975).

(Emphasis added). Whether we interpret the provisions of that Code section to mean general contract law or contract law as it is applicable to premarital contracts, we conclude that the facts contained in the record support the trial court's finding that the agreement is a valid and binding contract. Thus, whether we review the agreement under contract law, under the Supreme Court's decision in *Batleman*, or pursuant to the Act's provisions, the outcome remains the same—husband and wife executed a valid and enforceable contract.

## II.

Wife argues that the trial court erroneously refused to permit her to question husband concerning statements he made in a juvenile and domestic relations district court hearing, relating a statement made by Larry Sueters (Sueters), an attorney who at the time Sueters's statement was made was a mutual friend of the parties. The purpose of the questioning was to get into the record of this cause a statement attributed to Sueters. Husband objected, noting that the answer would be inadmissible hearsay and that Sueters was available to testify to what he had told wife prior to the execution of the agreement. We agree that the answer to that question was classic hearsay and there has been no showing of an exception to the hearsay evidence rule that would permit the statement's introduction in the manner sought by wife. *See* 2 Charles E. Friend, *The Law of Evidence in Virginia* § 18-1, 86-89 and § 18-8, 110-12 (4th ed. 1993). For the same reason, we hold that the refusal to admit the transcript of the juvenile and domestic relations district court hearing as substantive evidence was not error.

## III.

Wife further argues that the agreement had been abandoned and, therefore, its provisions are not enforceable. Wife asks that we "examine the testimony of the parties regarding their respective actions" and judge which testimony on the subject of abandonment "seems more credible." That is the responsibility of the trial court, and it ruled in favor of husband.

To support a claim of abandonment, "mutuality" of an agreement to abandon must be proved. In our review, we find there is ample evidence supporting the trial court's finding that the agreement was not abandoned, and we cannot say its finding is

plainly wrong. Accordingly, we hold that wife has not sustained her burden to prove abandonment. *See Jennings v. Jennings*, 12 Va. App. 1187, 1197-99, 409 S.E.2d 8, 15-16 (1991).

## IV.

■ The trial court held that provisions in the agreement that prevented the court from deciding appropriate sums to be paid for child support and dividing by partition or otherwise jointly titled property were not enforceable. Wife argues that the trial court is not empowered to excise part of the agreement and enforce other parts. Paragraph 15 of the agreement specifically provided that any portion held to be unenforceable would not bar enforcement of the remaining provisions. Whether a contract is entire or severable is determined by the intent of the parties. *Shelton v. Stewart*, 193 Va. 162, 167, 67 S.E.2d 841, 843 (1951); *Eschner v. Eschner*, 146 Va. 417, 422, 131 S.E. 800, 802 (1926). Here, the intent of wife and husband is clearly written into Paragraph 15 of the agreement, and it was not error for the trial court to hold enforceable those portions of the agreement that had not been declared invalid.

## V.

■ The party seeking to rescind a contract on the basis of unconscionability has "the burden at trial to prove by clear and convincing evidence the grounds alleged to void or rescind the agreement." *Drewry*, 8 Va. App. at 463, 383 S.E.2d at 12.

Despite wife's assertion that the agreement is unconscionable, the record supports the trial court's finding that it is not unconscionable.

> When the accompanying incidents are inequitable and show bad faith, such as concealments, misrepresentations, undue advantage, oppression on the part of the one who obtains the benefit, or ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the like, on the part of the other, these circumstances, combined with inadequacy of price, may easily induce a court to grant relief.

*Jennings*, 12 Va. App. at 1195, 409 S.E.2d at 13-14 (citations omitted). None of those circumstances is present here.

The record establishes that wife was of a sound and intelligent mind when the parties agreed to devise an antenuptial agreement, when they drafted and revised its provisions, and when she signed the agreement. In fact, the trial court recognized wife's ability to enter into a contract and characterized her as an intelligent, competent, and reasonable person.

> The court took note of the fact that, obviously, [wife], although, she may not be as legally sophisticated as [husband], she was certainly not totally without some knowledge of the law and contracts, having worked at a law firm and having, obviously, as I believe the testimony was, having just completed a course in contract law.

Nothing indicates that husband acted in bad faith, misled wife, or concealed material provisions of the agreement. Wife was afforded the opportunity to obtain independent legal counsel but voluntarily declined to do so and signed the agreement containing a provision waiving consultation with counsel for both parties. Moreover, no evidence established that husband coerced wife into signing the agreement. The record, thus, supports the trial court's finding that the agreement constituted a valid contract and was one entered into freely and voluntarily by both husband and wife.

Although wife's career has taken a different direction than she envisioned when she signed the agreement in 1977, "[c]ourts cannot relieve one of the consequences of a contract merely because it was unwise." *Derby v. Derby*, 8 Va. App. 19, 30, 378 S.E.2d 74, 80 (1989) (citations omitted). "A court is not at liberty to rewrite a contract simply because the contract may appear to reach an unfair result." *Kaufman v. Kaufman*, 7 Va. App. 488, 501, 375 S.E.2d 374, 381 (1988).

## VI.

"A subsequent change in the law does not justify the unilateral rejection of an agreement. A *quid pro quo* of entering into a comprehensive agreement is the 'possibility that the law may change in one's favor.' " *Bragan v. Bragan*, 4 Va. App. 516, 519, 358 S.E.2d 757, 759 (1987) (citation omitted).

Equitable distribution of marital property is a recent development in domestic relations law, and Virginia's equitable distribu-

tion statute was not in effect at the time of the signing of the agreement. *See* Code § 20-107.3. We have determined that credible evidence supports the trial court's finding that wife entered into the agreement freely and voluntarily, upon full financial disclosure, and with knowledge of her rights. This Court is not empowered to alter the agreement, signed in 1977, to include equitable distribution as found within current Virginia statutes. Because the agreement is a valid and enforceable contract, the provisions contained therein are binding upon both husband and wife.

For the reasons stated, the judgment of the trial court is affirmed.

*Affirmed.*

Benton, J., and Bray, J., concurred.