## CIRCUIT COURT OF LANCASTER COUNTY

Miller

v.

Miller

August 22, 1995

BY JUDGE JOSEPH E. SPRUILL, JR.

### I. *The Pre-Nuptial Agreement*

At issue in this phase of this divorce proceeding is whether a document offered into evidence by Mr. Miller is a valid, enforceable pre-nuptial agreement.

A hearing was held on the issue on July 14, and subsequently, counsel have provided to the Court memoranda supporting their respective positions.

No mention is made of the subject document in the Answer and Cross-Bill filed by Mr. Miller, nor was it referred to at either of two prior hearings in this matter. It first appears with a Request for Admissions filed by Mr. Miller on June 27.

The document in question is dated June 6, 1983, and is signed by both parties. They agree that it was written out in Mr. Miller's hand and first shown to Mrs. Miller the night before they were married. It was signed the following day just prior to the marriage ceremony on June 6, 1983.

The writing is a copy, the original having been lost or misplaced. The copy is barely legible, Mr. Miller, its author, himself having had difficulty attempting to read it into the record.

Mr. Miller said of the document in his trial testimony: "I don't believe this is complete . . . . Part of it is missing." (Transcript p. 12, 13.) In part, the document provides:

> This agreement is in conjunction with a pre-nuptial agreement drafted by Lou Schumann . . . . The terms of either this agreement or Schumann agreement are to be considered as comple-

mentary and supplementary as if bound together and/or contained within each said agreement . . . .

Mr. Schumann never prepared the agreement referred to.

Mr. Miller testified that prior to signing the document each disclosed to the other the full extent of their property. Mrs. Miller disputed this, testifying that she was told by Mr. Miller that signing the agreement was necessary so they would not "encumber the holdings of the family business." She testified that although she read it (she was a college graduate) she did not study it and because it was presented to her as she was about to be married to Mr. Miller, she assumed that it was as Mr. Miller had represented it to be. She did not confer with a lawyer or any other party prior to signing, nor was she given any documented financial information relating to property that Mr. Miller owned. She testified that her estate at that time consisted of an automobile and some furniture.

Because this writing is dated prior the enactment of the Virginia Premarital Agreement Act which became effective July 1, 1986, the validity of the agreement is governed by conditions set forth in *Batleman v. Rubin*, 199 Va. 156 (1957). *Rogers v. Yourshaw*, 18 Va. App. 816 (1994).

In *Batleman*, the Supreme Court quoted with approval Lindley, *Separation Agreements and Ante-Nuptial Contracts, Annotated, Revised Edition*, § 90, p. 794, as follows:

> To render an ante-nuptial agreement valid, there must be a fair and reasonable provision therein for the wife, or — in the absence of such provision — there must be full and frank disclosure to her of the husband's worth before she signs the agreement and she must sign freely and voluntarily, on competent independent advice, and with full knowledge of her rights.

While we have no evidence of the precise size of the respective estates, the evidence suggests that Mr. Miller had a substantial estate at the time of the marriage, from which he presently receives a monthly stipend, and Mrs. Miller had an automobile and furniture. The proposed agreement makes no reasonable provision for Mrs. Miller. In it, she disclaims any interest in Mr. Miller's estate, and Mr. Miller disclaims any interest in her estate. (This comment is based upon Mr. Miller's reading of the document in court, and is made with the recognition that the document itself is acknowledged to be incomplete.)

*Batleman* requires that in the absence of a reasonable provision for the wife, there must be full and frank disclosure to her of the husband's worth

before she signs the agreement and she must sign freely and voluntarily, on competent independent advice, and with full knowledge of her rights.

The circumstances here do not support a finding that these requirements were met. To confront a prospective bride on the eve of her wedding with such a document as this is, at best, poor form. Such a tactic gave Mr. Miller an undue advantage. The Court does not believe that Mr. Miller intentionally took advantage of either the situation or Mrs. Miller, but that seems to be the practical effect of his actions. There is no satisfactory showing that she had received a full and frank disclosure of Mr. Miller's worth or that she had full knowledge or understanding of her rights. Clearly, she did not have any competent independent advise, which *Batleman* requires.

Because the document, by its proponent's own admission is incomplete; because it refers to and purports to supplement another agreement which does not exist; because the evidence does not support a finding that there was a full and frank disclosure to the wife of her husband's worth; and because the wife did not have competent independent advice, the Court finds that this document is unenforceable as a pre-marital agreement.

## II. *Hospitalization Insurance*

It does not appear that the Court has made a definitive ruling on the request by Mrs. Miller for Mr. Miller to pay her hospitalization insurance premiums. I indicated in a May 31 letter to counsel that I was entering the sketch submitted by Mr. Balfour as a result of the May 4 hearing, since counsel could not agree on the form of the sketch. In fact, no signed order is in the file. I have now entered this Order with the third paragraph and the paragraph requiring Mr. Miller to pay the hospitalization insurance deleted.

The exhibit filed by Mrs. Miller indicates that the monthly hospitalization insurance premium is $249.01. We direct that Mr. Miller, pending further order of the Court, pay $125 of this sum monthly, by increasing his spousal support from $1,600 to $1,725 per month.

## III. *Wife's Counsel Fees*

Counsel for Mrs. Miller has requested the Court to award him counsel fees for his representation of Mrs. Miller in these proceedings. The Court has had this request under advisement. We awarded Mr. Balfour $500 on May 4. To date, he has billed Mrs. Miller approximately $10,000 for

counsel fees and expenses. The Court will order that Mr. Miller pay Mr. Balfour an additional $3,000, to be paid within ninety days of this date.