COURT OF APPEALS OF VIRGINIA

Present:  Judges Coleman, Willis and Senior Judge Hodges
Argued at Norfolk, Virginia


MICHAEL L. PELFREY
                                              OPINION BY
v.        Record No. 2585-96-1    JUDGE JERE M. H. WILLIS, JR.
                                              JULY 15, 1997
LINDA M. PELFREY


                FROM THE CIRCUIT COURT OF YORK COUNTY
                     N. Prentis Smiley, Jr., Judge

           Paul M. Lipkin (Goldblatt, Lipkin & Cohen,
           P.C., on brief), for appellant.

           Vicki Beard for appellee.



     Michael L. Pelfrey contends that the property settlement

agreement (agreement) he entered into with his former wife, Linda

M. Pelfrey, was unconscionable and that its execution was the

product of duress.  We disagree and affirm the decree of the

trial court.

                                I.

     Michael L. Pelfrey and Linda M. Pelfrey were married on

August 3, 1973, and were divorced on December 8, 1988.  Prior to

their 1988 divorce, the parties, represented by counsel,

negotiated and executed a property settlement agreement.  They

remarried on September 12, 1991, and separated in the fall of

1992.

     In February, 1992, Mr. and Mrs. Pelfrey began discussing a

second property settlement agreement.  Mr. Pelfrey presented Mrs.

Pelfrey with an agreement prepared by his attorney.  Mrs. Pelfrey

"tore it up," because it provided only one year of spousal support.  In October, 1992, Mrs. Pelfrey retained an attorney to draft an agreement.  On November 18, 1992, Mr. Pelfrey signed the agreement drafted by Mrs. Pelfrey's attorney.  Mrs. Pelfrey signed it the following day.

Mr. Pelfrey testified that he did not consult an attorney concerning the terms of the agreement.  However, prior to signing the agreement, he reviewed it and commented upon several drafts prepared by Mrs. Pelfrey's attorney.  Mrs. Pelfrey's attorney presented Mr. Pelfrey with a cover letter to the agreement advising him of the importance of the document and the need to have it reviewed by an attorney.

On July 13, 1993, Mr. Pelfrey sued for divorce, alleging that the agreement was unenforceable.  The trial court referred the question of the validity of the agreement to a commissioner in chancery.  Following submission of written briefs and an ore tenus hearing, the commissioner recommended that the agreement be declared valid and enforceable, finding that "[t]here is no evidence of [a] gross disparity of assets being given to Wife versus the Husband."  The trial court accepted the commissioner's findings and incorporated the terms of the agreement into the final decree of divorce.

## II.

The agreement contains separate paragraphs that inform the parties of the binding nature of the document.  It states that

each party has had adequate opportunity to consult with legal counsel and that each had signed the agreement freely, voluntarily and without coercion or compulsion.

The agreement provides that Mr. Pelfrey shall pay child support of $600 per month and spousal support of $1,100 per month. Upon the cessation of child support, Mr. Pelfrey must pay $1,700 per month spousal support to Mrs. Pelfrey. While Mrs. Pelfrey's remarriage would suspend spousal support, support would be reinstated upon the death of any subsequent husband or a marital separation for seven consecutive days. Mr. Pelfrey also agreed to pay for Mrs. Pelfrey's medical and telephone bills.

The agreement stipulates that support payments made by Mr. Pelfrey are not tax deductible. See I.R.C. §§ 71, 215. Furthermore, should the support payments be deemed "income" to Mrs. Pelfrey for tax purposes, the payments shall be modified so as to provide Mrs. Pelfrey with an after-tax income equal to the amount specified in the agreement.

In return, Mrs. Pelfrey relinquished any interest in Mr. Pelfrey's pension, profit-sharing or deferred compensation plans, of which none existed, and any interest in his two corporations, TEI, Inc. (TEI) and Tidewater Express, Inc. (Tidewater).

In 1991, Tidewater had gross receipts of $438,140, income of $111,973 and a tax loss of $924. In 1992, Tidewater had gross receipts of $533,168, income of $338,071 and a tax loss of $5,812. In 1991, TEI had gross receipts of $218,222 and a tax

loss of $48,936.  In 1992, TEI had gross receipts of $336,621 and a tax loss of $58,441.  Mr. Pelfrey has undertaken extensive expansion of his businesses.

## III.

On appeal, we review the evidence in the light most favorable to the party prevailing below.  Derby v. Derby, 8 Va. App. 19, 26, 378 S.E.2d 74, 77 (1989).  Furthermore, we are bound to affirm the trial court's approval of the commissioner's report unless that approval is plainly wrong or without evidence to support it.  See Scinaldi v. Scinaldi, 2 Va. App. 571, 573, 347 S.E.2d 149, 150 (1986).

Public policy seeks prompt resolution of issues concerning marital property rights.  Westbrook v. Westbrook, 5 Va. App. 446, 452, 364 S.E.2d 523, 527 (1988).  When the parties have entered into a valid agreement, the trial court may incorporate that agreement by reference into its final decree of divorce.  Code § 20-109.1; Drewry v. Drewry, 8 Va. App. 460, 466, 383 S.E.2d 12, 14 (1989).

Mr. Pelfrey contends that the terms of the agreement are unconscionable.  He bore the burden of proving that allegation by clear and convincing evidence.  Derby, 8 Va. App. at 26, 378 S.E.2d at 77.  "Historically, a bargain was unconscionable in an action at law if it was '"such as no man in his senses and not under delusion would make on the one hand and as no honest and fair man would accept on the other."'"  Id. at 28, 378 S.E.2d at

78-79 (citations omitted).

To determine whether an agreement is unconscionable, a court must examine the "adequacy of price" or "quality of value." Drewry, 8 Va. App. at 472, 383 S.E.2d at 18. "If inadequacy of price or inequality of value are the only indicia of unconscionability, the case must be extreme to justify equitable relief." Derby, 8 Va. App. at 28, 378 S.E.2d at 79 (citation omitted). However, "[i]f a 'gross disparity in value exchanged' exists then the court should consider 'whether oppressive influences affected the agreement to the extent that the process was unfair and the terms of the resulting agreement unconscionable.'" Drewry, 8 Va. App. at 472-73, 383 S.E.2d at 18 (citation omitted).

Mr. Pelfrey has undertaken substantial, and possibly continuing, financial obligations under the terms of the agreement. However, he maintains sole ownership and control of two expanding corporations. While he received income from Tidewater of only $26,700 in 1991 and $29,174 in 1992, he testified that Tidewater owed him money with which he planned to pay support to Mrs. Pelfrey.

"'Courts cannot relieve one of the consequences of a contract merely because it was unwise' . . . [or] 'rewrite a contract simply because the contract may appear to reach an unfair result.'" Rogers v. Yourshaw, 18 Va. App. 816, 823, 448 S.E.2d 884, 888 (1994) (citations omitted). Settlement

provisions concerning payment of medical and telephone bills, conditioned increases of spousal support, and attorney's fees do not shock the conscience. Rather, such clauses provide a realistic framework in which the parties may appraise each other's needs in resolving marital property issues. Instead of providing larger support payments or health insurance, a party may opt to pay medical bills directly. A party receiving spousal support is under no obligation to remarry. In order to encourage remarriage, and a negotiated cessation to support payments, the payor spouse may agree to reinitiate support payments to the payee spouse if a future marriage ends. Notwithstanding the disintegration of the marriage, the parties may have a continuing concern for each other's well being.

Because he did not prove by clear and convincing evidence a great disparity in value, Mr. Pelfrey failed to satisfy the initial threshold required for further judicial scrutiny. Thus, we need not examine the circumstances surrounding the adoption of the agreement to determine whether there existed "oppressive influences." The evidence sufficiently supports the finding that the agreement is not unconscionable.

IV.

Mr. Pelfrey contends that the agreement was the product of duress, and, therefore, is invalid and unenforceable. He argues that Mrs. Pelfrey's conduct compelled him to sign the agreement. We find no merit in this contention.

"Duress may exist whether or not the

- 6 -

> threat is sufficient to overcome the mind of a man of ordinary courage, it being sufficient to constitute duress that one party to the transaction is prevented from exercising his free will by reason of threats made by the other and that the contract is obtained by reason of such fact.  Unless these elements are present, however, duress does not exist. . . . Authorities are in accord that the threatened act must be wrongful to constitute duress."

Division of Social Services v. Unknown Father, 2 Va. App. 420, 435, 345 S.E.2d 533, 541 (1986) (quoting 6B Michie's Jurisprudence Duress and Undue Influence §§ 2-3 (Repl. Vol. 1985)).  "[D]uress is not readily accepted as an excuse," and must be proven by clear and convincing evidence.  Id. at 434, 345 S.E.2d at 541 (citations omitted).

A wide range of emotions is an expected and not uncommon byproduct of the dissolution of a marriage.  However, when spouses commence divorce proceedings and "propose to divide or sell all their property interests, they have assumed adversarial roles and no longer occupy a position of trust."  Drewry, 8 Va. App. at 470, 383 S.E.2d at 17.

The facts and circumstances of this case support the trial court's determination that duress did not excuse enforcement of the agreement.  Mr. Pelfrey testified that Mrs. Pelfrey had threatened to kill herself on more than one occasion if he did not sign an agreement.  He noted that she tried repeatedly to convince him to sign an agreement.  Mrs. Pelfrey admitted to threatening to kill herself twice in February, 1992, when Mr.

- 7 -

Pelfrey told her that he did not love her.  However, when the agreement was signed nine months later, Mr. Pelfrey was living with another woman.  He was not under a doctor's care.  The commissioner found that:  "It is clear from the evidence that [Mr. Pelfrey] 'wanted his freedom' and the signing of the Property Settlement Agreement was another step toward freedom.  There is no evidence of oppressive conduct or overreaching on behalf of [Mrs. Pelfrey]."  The evidence supports the trial court's approval of this conclusion.

The decree of the trial court is affirmed.

<u>Affirmed.</u>