# CIRCUIT COURT OF ROCKINGHAM COUNTY

Edward Shepherd, Jr.

v.

Sharon Shepherd

December 28, 2005

Case No. CH05-000441

BY JUDGE JOHN J. MCGRATH, JR.

This matter is before the Court on Defendant's Motion to Set Aside a Property Settlement Agreement and Demurrer. The Court held *ore tenus* hearings on December 5 and 15, 2005, and the parties submitted proposed findings of fact and conclusions of law.

Mr. and Mrs. Shepherd were married on June 22, 1991, in Richmond, Virginia. This is the third marriage for Mr. Shepherd and the second for Mrs. Shepherd. Mr. Shepherd is currently the pastor of the Broadway United Methodist Church. Before becoming a pastor, he worked as a police officer, private investigator, head of security at a regional Amtrak center, and a loan officer. Mrs. Shepherd is employed as a secretary at James Madison University.

The parties had been experiencing marital difficulties for at least fourteen months prior to their separation in January 2005. In the fall of 2003, Mrs. Shepherd began taking steps to protect herself financially in anticipation of a separation and/or divorce. In September 2003, Mrs. Shepherd contacted a personal friend for legal advice regarding her ownership interest in an Augusta County house jointly owned by Mr. and Mrs. Shepherd and Mr. Shepherd's

mother. She was informed by her friend, whose husband had a friend who was a divorce lawyer in Richmond, that the property would need to be part of any divorce settlement and that she would be entitled to her one-fourth share.

In October 2003, Mrs. Shepherd opened a new account in her name alone with Commonwealth One Federal Credit Union and transferred $10,000 from the parties' joint bank account to the new account. She testified that she made this transfer to ensure that she would have funds available to her in the event of a separation. Mrs. Shepherd had the monthly account statements from Commonwealth One sent to her work e-mail account so that they would not arrive at the marital residence. Her paycheck was deposited directly into her Commonwealth One account. Over the next fourteen months, Mrs. Shepherd used funds from the Commonwealth One account to pay marital household expenses, such as groceries and taxes, as well as personal expenses. Since Mrs. Shepherd managed the parties' finances during the marriage, Mr. Shepherd did not discover the existence of the Commonwealth One account until January 2005.

On or around January 7, 2005, Mrs. Shepherd began looking for an apartment, intending to leave the marital residence. While browsing the classified section of the January 7, 2005 newspaper, she circled various advertisements for rental housing. She placed the newspaper in her tote bag, which she carried to and from work. According to her testimony, Mrs. Shepherd also began investigating the value of various marital assets at that time. She determined the approximate value of their four vehicles and of the Augusta County house in which the parties owned a share. Mrs. Shepherd also made handwritten notes listing the parties' investments and credit card accounts, as well as matters she would need to discuss with her employer's human resources department in the event of a divorce.

On the evening of Saturday, January 8, 2005, Mr. Shepherd found the newspaper with circled apartment advertisements. When he asked Mrs. Shepherd about it, she said that she thought they should divorce. Mr. Shepherd replied that he did not want a divorce and that he was surprised Mrs. Shepherd wanted to end the marriage. The parties did not have any significant discussions about divorce or separation over the next week.

On Sunday, January 16, 2005, while Mrs. Shepherd was out of the house attending a church function, Mr. Shepherd discovered the Commonwealth One bank statements and Mrs. Shepherd's handwritten notes in her tote bag. When Mrs. Shepherd arrived home, her husband questioned her about the documents. She told him that she intended to leave the marriage and that she wanted a divorce. According to the wife's testimony, Mr. Shepherd told her that, unless she signed a property settlement agreement to be prepared by his lawyer, he

would file federal charges of theft or fraud arising from her October 2003 transfer of money from their joint bank account to the account in her name. He also told her that she could be charged with theft if she did not return monetary gifts that Mr. Shepherd's mother had given her over the past few years. The husband's mother had made it a practice to make deposits to both Mr. Shepherd's and Mrs. Shepherd's investment accounts each Christmas.

Mrs. Shepherd, in her testimony, indicated that she believed her husband to be capable of carrying out these threats due to his experience as a former police officer and private investigator. Mrs. Shepherd testified that Mr. Shepherd also threatened to embarrass her by telling her parents about her conduct. Mrs. Shepherd further testified that her husband took away her car keys, phone, checkbook, and credit cards. Mr. Shepherd denied these allegations.

The following day, Mr. Shepherd drove Mrs. Shepherd to several retail stores with which they had credit card accounts and had Mrs. Shepherd's name removed from the accounts. Mr. Shepherd also drove his wife to an American Express office in Waynesboro where she transferred monetary gifts back to the donor, Mr. Shepherd's mother. There was no credible evidence that Mrs. Shepherd objected to such transactions at that time.

On January 18, 2005, Mr. Shepherd drove Mrs. Shepherd to James Madison University and picked her up at the end of the work day. Although she had access to a telephone and e-mail, she did not attempt to contact anyone regarding their marital situation. On January 19, 2005, Mr. Shepherd met Mrs. Shepherd at her place of employment and drove her to the office of his attorney, William Shmidheiser, III. Mr. Shmidheiser informed Mrs. Shepherd that he was representing her husband in the divorce, and Mrs. Shepherd admits that she understood that the attorney was not representing her interests. Although she was invited to leave, Mrs. Shepherd chose to remain in the office while Mr. Shmidheiser and Mr. Shepherd discussed the property settlement agreement that the husband wanted his attorney to draft. During the session with his lawyer, Mr. Shepherd checked with Mrs. Shepherd from time to time to verify that he was reciting the terms of the agreement correctly. When the meeting was over, Mr. Shepherd drove Mrs. Shepherd back to work. Mr. Shepherd then returned Mrs. Shepherd's car keys, house keys, and checkbook.

On January 24, 2005, Mr. Shepherd again picked up his wife from her place of employment and drove her to Mr. Shmidheiser's office. Mr. and Mrs. Shepherd met with a notary public employed by the attorney and signed the property settlement agreement in the notary's presence. After the parties signed the property settlement agreement, Mr. Shepherd drove Mrs. Shepherd back to work. Mrs. Shepherd testified that her husband had shown her a draft of the property settlement agreement prior to January 24, 2005, that she had had time

to review the document, and that she had knowingly declined to consult an attorney. Both parties continued to live in the marital residence until Mrs. Shepherd moved out on January 29, 2005. The parties had no contact thereafter except to transfer various investments and to sign their joint tax return. During these brief encounters, Mrs. Shepherd did not indicate that she believed the property settlement agreement was unfair.

It was not until May 2005 that Mrs. Shepherd began to tell some of her family and friends about the separation and the property settlement agreement. Shortly thereafter, Mrs. Shepherd's aunt contacted an attorney on her behalf to discuss changing or challenging the property settlement agreement. Mrs. Shepherd testified that she did not actually meet with an attorney until later that summer.

Mrs. Shepherd disputed the validity of the property settlement agreement for the first time when she filed this Motion on September 13, 2005, a few hours after Mr. Shepherd filed a Bill of Complaint for a divorce *a vinculo matrimonii* seeking to incorporate the property settlement agreement. Under the terms of the agreement, Mr. Shepherd received approximately $615,000 and Mrs. Shepherd received approximately $37,000. Each party waived spousal support. On October 4, 2005, the wife filed a demurrer alleging that the property settlement agreement was void on the grounds of unconscionability, undue influence, coercion, and duress.

*Analysis*

"Marital property settlements entered into by competent parties upon valid consideration for lawful purposes are favored in the law and such will be enforced unless their illegality is clear and certain." *Galloway v. Galloway*, 2005 Va. App. LEXIS 483 (November 29, 2005), *citing Cooley v. Cooley*, 220 Va. 749, 752, 263 S.E.2d 49, 52 (1980) (citation omitted); *Derby v. Derby*, 8 Va. App. 19, 25, 378 S.E.2d 74, 77 (1989). In this case, the wife has the burden of proving "by clear and convincing evidence the grounds alleged to void or rescind the agreement." *Galloway*, at *11, *citing Drewry v. Drewry*, 8 Va. App. 460, 463, 383 S.E.2d 12 (1989); *Gill v. Gill*, 219 Va. 1101, 254 S.E.2d 122 (1979).

For a property settlement agreement to be void on the grounds of unconscionability, the party challenging the document must show both a gross disparity in the division of assets and "overreaching or oppressive influences." *Galloway*, at *12. Mr. Shepherd received over 90% of the parties' total assets. The property settlement agreement, however, was not clearly obtained as a result of overreaching or oppressive influences. Mrs. Shepherd admitted that

she was given an opportunity to review the property settlement agreement and that she declined to seek the advice of an attorney. She was not forced to sign it. Although Mr. Shepherd drove her to Mr. Shmidheiser's office on January 24, 2005, to sign the document, the parties testified that Mrs. Shepherd had driven herself to work that day and that Mr. Shepherd drove her to the attorney's office for the sake of convenience. As evidenced by her detailed planning, beginning as early as September 2003, Mrs. Shepherd understood the nature of the parties' assets and her legal rights in the event of a divorce. Her testimony indicated that she was willing to give her husband whatever he wanted in order to obtain a divorce. Therefore, the Court finds that the wife failed to prove overreaching or oppressive influences by clear and convincing evidence.

To prove coercion or duress, the party challenging the validity of the property settlement agreement must "establish by clear and convincing evidence that, in fact, [she was] subject to such external pressures and compulsion from the other party to the contract that [her] signing of the agreement was not a product of [her] free will, but had been forced upon [her]." *McCall v. McCall*, 43 Va. Cir. 296 (Rockingham Co. 1997), *citing Pelfrey v. Pelfrey*, 25 Va. App. 239, 487 S.E.2d 281 (1997); *Division of Social Services v. Unknown Father*, 2 Va. App. 420, 345 S.E.2d 533 (1986). " 'Duress is not readily accepted as an excuse,' and must be proven by clear and convincing evidence. *Pelfrey*, 25 Va. App. at 246, 487 S.E.2d at 285, *citing Division of Social Services v. Unknown Father*, 2 Va. App. at 434, 345 S.E.2d at 541. There is no fiduciary duty between spouses who are negotiating a property settlement agreement at arms-length in anticipation of a separation or divorce. *Barnes v. Barnes*, 231 Va. 39, 42, 340 S.E.2d 803, 804 (1986).

Mrs. Shepherd's conduct in the years preceding the property settlement agreement shows that she was capable of protecting her own interests. She had hired an attorney for her first divorce, so she was aware of the benefits of retaining counsel. She had also taken steps to protect herself financially in the event of dissolution of this marriage. She transferred $10,000 to a bank account in her sole name, consulted an attorney through a friend to clarify her property rights in the Augusta County house, and researched the value of the parties' assets. Although she was supposedly without her keys and checkbook after the husband found evidence of her intent to leave the marriage, Mrs. Shepherd did not make any attempt to telephone family, friends, or neighbors. Nor did she try to contact an attorney to determine whether she had committed any crime as her husband asserted.

Moreover, "allegations of duress must be made promptly upon the removal of the duress." *Gloth v. Gloth*, 154 Va. 511 (1930); *Wright v. Wright*,

12 Va. Cir. 250 (Henrico Co. 1988) (Kulp, J.). Mrs. Shepherd did not timely repudiate the property settlement agreement. Any oppression or duress that may have existed was removed by January 29, 2005, when Mrs. Shepherd abandoned the marital residence. Yet, she waited until the summer of 2005 to meet with an attorney. Even after telling family members about the separation and property settlement agreement in May of 2005 and being told by them that the agreement was unfair and/or invalid, Mrs. Shepherd did not immediately contact an attorney. Indeed, she did not take any legal action to challenge the property settlement agreement until September 13, 2005, more than seven months after she signed the agreement and moved out of the marital residence.

"Courts cannot relieve one of the consequences of a contract merely because it was unwise." *Pelfrey v. Pelfrey*, 25 Va. App. 239, 245, 487 S.E.2d 281, 284 (1997), *citing Rogers v. Yourshaw*, 18 Va. App. 816, 823, 448 S.E.2d 884, 888 (1994) (citations omitted). Based upon the testimony and evidence offered by the parties, the Court finds that Mrs. Shepherd failed to satisfy her burden of proving duress or unconscionability by clear and convincing evidence.

*Order*

For the reasons set forth above, it is hereby ordered, adjudged, and decreed that the defendant's Motion to Set Aside Property Settlement Agreement and Demurrer are overruled. The parties shall have ten days within which to file such written objections as they deem advisable. The defendant shall file her Answer to the Bill of Complaint within fourteen days after the entry of this Order.

The Clerk is hereby directed to send attested copies of this Opinion and Order to William E. Shmidheiser, III, Esq., Counsel for Plaintiff; and J. Burns Earle, III, Esq., Counsel for Defendant.