**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-2363

TONY A. MESSER; PHILIP E. BARBROW; BENJIE G. HICKS; KENDALL W. LUTTRELL; DARRELL G. MURRAY; DENNIS J. STILTNER; TIMOTHY M. WAMPLER; MICHAEL L. PARKER; CHARLES E. VESTAL; JIMMY AMBERGEY; DAVE S. BOOHER; JOANNE T. BOOHER; JOHN S. BOOKER; DAVID BROWNING; SUMMER CARMACK; WILLIAM C. CHURCH; MELVIN E. CLARK; JOYCE DAUGHTERY; HOMER L. DAVIS; PATRICIA C. EADS; DAVID ESTEP; JAMES D. FOSTER; DENNIS A. FRALEY; CURTIS D. HAYDEN; PENNY HELTON; GAYLORD K. HOBBS, JR.; GARY HOUSER; SHERRIE HUBBARD; MICHAEL LEONARD; GEARL LOWE; MANDY MARTIN; STEWART MAXFIELD; DAVID C. MCCLAIN; FLOYD D. MCMILLAN; JACKIE L. MULLINS; TOMMY MULLINS; DOROTHY M. ORR; DAVID O'QUINN; LARRY J. RICHARDS; DANNY L. SALTZ; KAREN P. SCYPHERS; JAMES E. SMITH; JAMIE STOUT; ROBERT L. SULLINS; TIMOTHY A. THOMAS; ALISON WALLS; JEFF WAMPLER; DAVID A. STOVALL; KEVIN N. MUMPOWER,

        Plaintiffs - Appellants,

    v.

BRISTOL COMPRESSORS INTERNATIONAL, LLC, trading as Bristol Compressors,

        Defendant - Appellee,

    and

GARRISON INVESTMENT GROUP, LP

        Defendant.

Appeal from the United States District Court for the Western District of Virginia, at Abingdon. James P. Jones, Senior District Judge. (1:18-cv-00040-JPJ-PMS)

———————————

Submitted:  March 24, 2023

Decided:  April 3, 2023

———————————

Before WILKINSON, HARRIS, and HEYTENS, Circuit Judges.

———————————

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

———————————

**ON BRIEF:**  Mary Lynn Tate, TATE LAW PC, Abingdon, Virginia, for Appellants.[1]

———————————

Unpublished opinions are not binding precedent in this circuit.

———————————

[1] Appellee has not entered an appearance or filed a response brief.

PER CURIAM:

Plaintiffs, a group of former employees of Bristol Compressors International, LLC ("BCI"), appeal the district court's orders granting three motions for partial summary judgment that BCI filed in Plaintiffs' class action lawsuit under the Worker Adjustment and Retraining Notification Act of 1988 ("the WARN Act"), 29 U.S.C. §§ 2101-2109. At issue here are three questions: first, whether BCI validly eliminated its severance plan prior to the termination of Plaintiffs' employment; second, whether certain Plaintiffs waived their claims against BCI by signing a Stay Bonus Letter Agreement ("SBLA"); and third, whether four Plaintiffs ("the Four") received adequate notice under the WARN Act prior to the termination of their employment. For the following reasons, we affirm the district court's orders in part, vacate in part, and remand for further proceedings.

"We review a summary judgment award de novo, based on our independent review of the entire record." *Bellon v. PPG Emp. Life & Other Benefits Plan*, 41 F.4th 244, 251 (4th Cir. 2022) (internal quotation marks omitted). Summary judgment is only appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In conducting summary judgment review, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor." *Bellon*, 41 F.4th at 251 (cleaned up).

The WARN Act "requires certain employers to provide notice to their employees of sudden, significant employment loss so that they could seek alternative employment and their communities could prepare for the economic disruption of a mass layoff." *Schmidt v.*

3

*FCI Enters. LLC*, 3 F.4th 95, 101 (4th Cir. 2021) (internal quotation marks omitted).  The Act specifically provides that a covered employer "shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order . . . to each affected employee."  29 U.S.C. § 2102(a)(1).  An employer who violates this requirement "shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff for" both "back pay for each day of violation" and "benefits under an employee benefit plan."  *Id.* § 2104(a)(1)(A)-(B).  Damages are "calculated for the period of the violation, up to a maximum of 60 days . . . ."  *Id.* § 2104(a)(1).  The WARN Act is also "supplemented by extensive Department of Labor regulations, which we must give controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."  *Schmidt*, 3 F.4th at 101 (cleaned up).

## I.

First, Plaintiffs argue that the district court erred by granting BCI's motion for partial summary judgment related to the elimination of BCI's employee severance plan.  It is undisputed that the severance plan was an employee benefit plan covered by ERISA.[2]  ERISA plans are interpreted "under ordinary principles of contract law, enforcing the plan's plain language in its ordinary sense.  Where a term is ambiguous, we must construe it against the drafter, and in accordance with the reasonable expectations of the insured."  *Wheeler v. Dynamic Eng'g, Inc.*, 62 F.3d 634, 638 (4th Cir. 1995) (citations omitted).  And

---

[2] Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461.

4

although "we interpret an ERISA plan under federal common law, we may use principles of state common law to guide our analysis." *Id.*

Because the severance plan was an unvested employee welfare benefit plan under ERISA, BCI was "free to amend the terms of the plan or terminate it entirely." *Bellon*, 41 F.4th at 252 (internal quotation marks omitted); *see Biggers v. Wittek Inds., Inc.*, 4 F.3d 291, 295 (4th Cir. 1993). "Every employee benefit plan covered by ERISA, however, must be established pursuant to a written instrument, with procedures outlined for amending the plan and identifying those with authority to make amendments." *Biggers*, 4 F.3d at 295 (citing 29 U.S.C. § 1102(a)(1), (b)(3)); *see also Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995). Amendments or modifications of ERISA plans "must be implemented in conformity with the formal amendment procedures and must be in writing." *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 58-59 (4th Cir. 1992).

Here, the severance plan was wholly contained within BCI's employee handbook, and the plan could be amended or eliminated pursuant to the same procedure as any other portion of the handbook.[3] The handbook stated:

> Nothing in this handbook is meant to create an employment contract and nothing in this handbook may be modified or amended except in writing by the Human Resources department. The Company reserves the right to modify, change, or eliminate provisions in this handbook.

---

[3] In accordance with our standard of review, we recite the relevant facts in the light most favorable to Plaintiffs, the nonmoving parties below. *See Bellon*, 41 F.4th at 251.

5

(J.A. 438).[4]   The handbook further provided that "[t]he Company may change the provisions of this Handbook at any time and the programs and policies outlined in this Handbook are not contractual in nature."  (J.A. 487).

On July 27, 2018, BCI's Board of Directors ("the Board") signed a "Unanimous Written Consent" document ("the board resolution") relating to the winding down and liquidation of BCI.  As relevant to this appeal, the board resolution stated:

> **WHEREAS**, after further discussions and due consideration, the Board has unanimously determined that it is in the best interests of the Company and its creditors to terminate the Company's severance plan as described in Section 7.5 of the Company's employee handbook, effective as of July 27, 2018, and to delete the corresponding provisions in Section 7.5 of the Company's employee handbook effective as of July 27, 2018; and
>
> **WHEREAS**, the Board has determined that it is in the best interests of the Company to authorize and empower [Dalton] Edgecomb (the "Authorized Person") to take such actions on behalf of the Company as he deems necessary or desirable in connection with . . . the termination of the Company's severance plan;
>
> **NOW, THEREFORE, BE IT RESOLVED** . . . that the Board unanimously approves of and authorizes the termination of the Company's severance plan as described in Section 7.5 of the Company's employee handbook, effective as of July 27, 2018, and the deletion of the corresponding provisions in Section 7.5 of the Company's employee handbook effective as of July 27, 2018.
>
> **FURTHER RESOLVED**, that the Authorized Person is hereby authorized and empowered to take such actions as may be necessary or advisable to execute, deliver, and file any documents and to take all actions and pay all fees for and on behalf of the Company that he deems necessary or appropriate in order . . . to effectuate the termination of the Company's severance plan and the corresponding revisions to the Company's employee handbook, and to comply with all applicable laws in connection therewith.

---

[4] Citations to "J.A." refer to the Joint Appendix filed in this appeal.

(J.A. 504-05). Although BCI's Human Resources department (HR) had previously been asked to "implement" changes to the employee handbook once those changes had been "decided and authorized by management" (J.A. 1116)—including prior modifications to the severance plan—no further action was taken to effectuate the elimination of the severance plan. Shortly thereafter, BCI began to lay off employees as it prepared to close its manufacturing facility.

At issue here is whether the board resolution was sufficient to terminate the severance plan, or whether the elimination of the plan required further action on the part of HR. The district court found that the board resolution effectively eliminated the severance plan. Relying on the Supreme Court's decision in *Schoonejongen*, the district court reasoned that the provisions of the handbook stating that "the Company" reserved the right to eliminate provisions of the handbook meant that the Board, as the "ultimate decision-maker for" BCI (J.A. 1259), had the power to eliminate the severance plan without any additional action from HR. And because HR lacked the power to unilaterally amend the handbook, the district court determined that "[t]he provision of the handbook regarding amendments prepared by [HR] was merely an administrative procedure designed to communicate changes to employees." (J.A. 1259).

We conclude that, on the facts of this case, the district court's reliance on *Schoonejongen* was misplaced. In that case, the Supreme Court held that a provision stating that "[t]he Company reserves the right at any time and from time to time to modify or amend, in whole or in part, any or all of the provisions of the Plan" identified both who could amend the plan and a procedure for amending the plan. 514 U.S. at 76 (internal

7

quotation marks omitted); *see id.* at 77-81. That clause, however, was the only provision that could be interpreted to set forth the procedure by which the plan at issue could be amended. *See generally id.* at 75-80. In contrast, BCI's handbook stated, in two successive sentences, both who had the power to alter or eliminate handbook provisions—the Company—and the procedure by which those amendments needed to occur: "in writing by the Human Resources department." (J.A. 438). The fact that the provisions discussing the Board's right to eliminate portions of the handbook could have been read, in the absence of any other procedural requirements, to establish a procedure by which the Board could effectuate that right cannot be used to read another sentence establishing such a procedure out of the handbook. Nor does it matter that HR did not have the power to unilaterally eliminate handbook provisions; that does not change the fact that, according to the terms by which the severance plan could be altered or amended, the Board was required to have HR effectuate its elimination of the plan in writing. Because the facts, construed in the light most favorable to Plaintiffs,[5] show that the Board did not follow that written procedure for eliminating the severance plan, the district court erred by finding that BCI was entitled to summary judgment on this issue.

---

[5] We further note that, in supporting its interpretation of the relevant handbook provisions, the district court appears to have failed to construe several facts in the light most favorable to Plaintiffs. To the extent that the terms of the handbook were ambiguous and could be supplemented by facts external to the plain language of the handbook itself, we conclude that there are genuine disputes of material fact that preclude a grant of summary judgment in favor of BCI on this issue.

II.

Next, Plaintiffs challenge the district court's grant of summary judgment to BCI on all claims by those employees who signed the SBLA—which contained a provision under which the signatory employees waived their right to participate in the instant litigation—on the basis that the SBLA is unconscionable. "[U]nconscionability deals primarily with a grossly unequal bargaining power at the time the contract is formed." *Envirotech Corp. v. Halco Eng'g, Inc.*, 364 S.E.2d 215, 220 (Va. 1988).[6] A contract is unconscionable if the bargain is "such as no man in his senses and not under a delusion would make." *Conley v. Bonasera*, 845 S.E.2d 242, 246 (Va. Ct. App. 2020) (internal quotation marks omitted). In other words, "[t]he inequality must be so gross as to shock the conscience." *Smyth-Bros.-McCleary-McClellan Co. v. Beresford*, 104 S.E. 371, 382 (Va. 1920). The party seeking to void an agreement bears the burden of proving it is unconscionable by clear and convincing evidence. *Allocca v. Allocca*, 478 S.E.2d 702, 705 (Va. Ct. App. 1996). Thus, BCI was entitled to summary judgment if Plaintiffs "failed to make a sufficient showing on [this] essential element of [their] case." *Blankenship v. NBCUniversal, LLC*, 60 F.4th 744, 756 (4th Cir. 2023) (internal quotation marks omitted).

"To determine whether an agreement is unconscionable, a court must examine the adequacy of price or quality of value." *Pelfrey v. Pelfrey*, 487 S.E.2d 281, 284

---

[6] Under its own terms, the "validity and interpretation" of the SBLA is governed by Virginia law. (*E.g.*, J.A. 729).

9

(Va. Ct. App. 1997) (internal quotation marks omitted). "If inadequacy of price or inequality in value are the only indicia of unconscionability, the case must be extreme to justify equitable relief." *Galloway v. Galloway*, 622 S.E.2d 267, 270-71 (Va. Ct. App. 2005) (internal quotation marks omitted). And "gross disparity in the value exchanged is a significant factor in determining whether oppressive influences affected the agreement to the extent that the process was unfair and the terms of the resultant agreement unconscionable." *Derby v. Derby*, 378 S.E.2d 74, 79 (Va. Ct. App. 1989). Thus, "[a]bsent evidence of gross disparity in value exchanged[,] there exists no basis to claim unconscionability." *Drewry v. Drewry*, 383 S.E.2d 12, 18 (Va. Ct. App. 1989) (internal quotation marks omitted).

If such disparity exists, then courts also consider "whether oppressive influences affected the agreement to the extent that the process was unfair." *Galloway*, 622 S.E.2d at 271 (internal quotation marks omitted); *see also id.* (explaining that party asserting unconscionability "must prove both" gross disparity and "overreaching or oppressive influences"). This involves assessing whether there is evidence of "bad faith, such as concealments, misrepresentations, undue advantage, oppression on the part of the one who obtains the benefit, or ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the like." *Derby*, 378 S.E.2d at 79 (internal quotation marks omitted). Virginia courts also consider whether the contract was a contract of adhesion, but "such contracts are not unconscionable per se." *PHC-Martinsville, Inc. v. Dennis*, No. 161019, 2017 WL 4053898, at *2 n.4 (Va. Sept. 14, 2017) (citing *Saturn Distrib. Corp. v. Williams*, 905 F.2d 719, 725 (4th Cir. 1990)).

10

We conclude that the district court did not err by finding Plaintiffs had not met their burden to show that the SBLA was unconscionable. Although it is undisputed that all the signatory employees had already earned a portion of the stay bonus offered in the SBLA as part of a prior stay bonus offer, Plaintiffs did not establish a genuine dispute as to whether the additional amount employees were offered under the SBLA—$1,300 for hourly employees, and varied amounts for salaried employees—was new consideration that the employees were not already owed. Plaintiffs also failed to establish that the additional consideration offered to the hourly employees was so grossly inadequate as to render the SBLA unconscionable. Although the additional amount was less than they might have received following litigation of their WARN Act claims, that disparity does not, by itself, establish a gross disparity. *See Derby*, 378 S.E.2d at 79 ("Consideration adequate to support a contract does not have to be full consideration."). Because Plaintiffs failed to establish a gross disparity in consideration as to the hourly employees, their unconscionability argument as to those employees' agreements must fail.

As to the salaried signatory employees, although the district court found there was a more substantial disparity in value as to the additional consideration they received, it also found that Plaintiffs nonetheless did not meet their burden to establish "the kind of oppressive influences necessary to render the SBLAs unenforceable." (J.A. 1271). Although the SBLA contains some statements that could be read as evidence of bad faith on the part of BCI, Plaintiffs did not offer any evidence from the salaried employees establishing "whether oppressive influences affected the agreement to the extent that the process was unfair." *Galloway*, 622 S.E.2d at 271 (internal quotation marks omitted).

11

Moreover, although the SBLA on its face appeared to be a contract of adhesion, the SBLA provided at least a seven-day window during which employees could consider its terms and consult a lawyer, and many employees decided not to sign the SBLA during that time. As Virginia courts have explained, "[c]ourts cannot relieve one of the consequences of a contract merely because it was unwise or rewrite a contract simply because the contract may appear to reach an unfair result." *Pelfrey*, 487 S.E.2d at 284 (cleaned up). Thus, we conclude that the district court did not err by finding that the SBLA was enforceable.

## III.

Finally, Plaintiffs argue that the district court erred by granting BCI summary judgment on the Four's WARN Act claims. As we previously noted, the WARN Act provides that a covered employer "shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order . . . to each affected employee." 29 U.S.C. § 2102(a)(1). This requirement is supplemented by several regulations, including 20 C.F.R. § 639.10, which provides that once an employer has provided initial notice of a plant closing, "[a]dditional notice is required when the date or schedule of dates of a planned plant closing or mass layoff is extended beyond the date or the ending date of any 14-day period announced in the original notice." 20 C.F.R. § 639.10. "If the postponement is for 60 days or more, the additional notice should be treated as new notice subject to the" regulations governing initial notice. *Id.* § 639.10(b). Alternatively, "[i]f the postponement is for less than 60 days, the additional notice should be given as soon as possible to the [proper party] and should include reference to the earlier notice, the

12

date (or 14-day period) to which the planned action is postponed, and the reasons for postponement." *Id.* § 639.10(a).

For initial or new notice, the regulations require, among other things, that notice to an unrepresented employee contain "[t]he expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated," *id.* § 639.7(d)(2).[7] The regulations also provide, however, that

> [t]he information provided in the notice shall be based on the best information available to the employer at the time the notice is served. It is not the intent of the regulations, that errors in the information provided in a notice that occur because events subsequently change or that are minor, inadvertent errors are to be the basis for finding a violation of WARN.

*Id.* § 639.7(a)(4).

Here, BCI initially notified employees on July 31 that it expected its facility "to close by or about August 31, 2018," and that their employment with BCI could end as soon as July 31, 2018. (*E.g.*, J.A. 1008). On August 1, BCI notified its employees through a Questions and Answers ("Q&A") document "that the facility will close and that [their] last day of employment will be on or before September 30, 2018." (J.A. 512; *see* J.A. 1116 (Eades' declaration she was directed to share Q&A document with employees on August 1)). The Four, however, were not terminated until October 19, 2018, and BCI's manufacturing facility did not close until November.

---

[7] "Date" is defined as "a specific date or . . . a 14-day period during which a separation or separations are expected to occur." 20 C.F.R. § 639.7(b).

As the district court correctly concluded, because BCI postponed the termination of the Four's employment past September 30, they were entitled to additional notice under 20 C.F.R. § 639.10. It is undisputed that they did not receive any additional notice prior to their last day of employment. The district court, however, found that BCI was not liable for its violation of § 639.10 because the Four remained employed for more than 60 days after BCI published the July 31 notice; there was "no evidence that they suffered any prejudice from the lack of additional notice"; and the notice they received "served the purpose of the WARN Act: to allow them adequate time to prepare for losing their jobs." (J.A. 1325-26).

We conclude that the district court erred in finding that BCI was entitled to summary judgment on the Four's claims. Although the district court relied on several cases from our sister circuits in reaching its conclusion, we do not find those cases to be persuasive here. It is well established that "errors in the information provided in a notice that occur because events subsequently change or that are minor, inadvertent errors are [not] to be the basis for finding a violation of WARN." 20 C.F.R. § 639.7(a)(4); *see Pennington v. Fluor Corp.*, 19 F.4th 589, 600 (4th Cir. 2021); *see also Schmelzer v. Off. of Compliance*, 155 F.3d 1364, 1369 (Fed. Cir. 1998); *Saxion v. Titan-C-Manuf., Inc.*, 86 F.3d 553, 561 (6th Cir. 1996); *Kalwaytis v. Preferred Meal Sys., Inc.*, 78 F.3d 117, 121-22 (3d Cir. 1996). That provision, however, is more appropriately applied to situations in which employees received the WARN Act notice to which they were entitled, but that notice did not contain all the information required by the regulations. *See Pennington*, 19 F.4th at 600 (applying provision to find no WARN Act violation when employer "failed to include a required

14

telephone number" but provided an email address and subsequently issued an amended notice with requisite phone number); *Schmelzer*, 155 F.3d at 1368-69 (finding employer substantially complied with regulations when notice omitted expected termination date, but "that missing information was otherwise provided to [employee] more than 60 days before his termination").

Here, in contrast, BCI did not simply omit information from the notice it provided; it failed to provide notice to which the Four were entitled, and it failed to identify a statutory or regulatory basis for excusing its failure to do so. We decline to read an additional requirement into the statute or regulations that Plaintiffs were required to establish that they were prejudiced by BCI's failure to provide the requisite notice. *See Loc. 1239, Int'l Brotherhood of Boilermakers v. Allsteel, Inc.*, 9 F. Supp. 2d 901, 906 (N.D. Ill. 1998) ("The language of the statute does not focus on the knowledge of the employee; it focuses on whether the defendant violated the statute and how long the violation lasted. Because the language is plain and specific, there is no reason for this court to add another prerequisite for liability.").

The district court relied primarily on the Fifth Circuit's decision in *Carpenters District Council of New Orleans & Vicinity v. Dillard Department Stores, Inc.*, 15 F.3d 1275 (5th Cir. 1994), in which that court found that employees who received 60 days' notice under the WARN Act were not entitled to damages for their employer's failure to provide them new or additional notice under the regulations because there was no violation period that could be used to calculate the amount of back pay they were owed, *id.* at 1286-87. We are not persuaded by the Fifth Circuit's analysis. In the absence of any

15

additional regulations interpreting WARN Act, we could agree with the *Carpenters* court that an employee whose employment was terminated more than 60 days after his employer provided a WARN Act notice might not be eligible for damages under § 2104. This interpretation of the statute, however, would ignore the requirements of 20 C.F.R. § 639.10, rendering meaningless the requirements of that regulation. Thus, we conclude that the district court erred by finding as a matter of law that BCI was not liable to the Four on their WARN Act claims.[8]

Accordingly, we vacate the district court's grant of summary judgment to BCI on the severance plan issue and the Four's WARN Act claims, affirm the grant of summary judgment as to the employees who signed the SBLA, and remand for further proceedings. We dispense with oral argument with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED*

---

[8] We do not by this disposition express an opinion on the ultimate disposition of the Four's claims.

16